# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

NO. 11-1253

ALFRED PROCOPIO, JR., APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided                                      October 16, 2012 )

*Glenn R. Bergmann* and *Thomas Polseno*, both of Bethesda, Maryland, were on the brief for the appellant.

*Karen Hartridge*, Appellate Attorney, with whom *Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; and *Carolyn F. Washington*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and HAGEL and SCHOELEN, *Judges*.

HAGEL, *Judge*: Alfred Procopio, Jr., appeals through counsel a March 16, 2011, Board of Veterans' Appeals (Board) decision denying entitlement to VA benefits for prostate cancer and diabetes mellitus type II with edema, both to include as secondary to herbicide exposure. Record (R.) at 3-15. Mr. Procopio's Notice of Appeal was timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a). Because the Board member conducting the September 2010 hearing did not comply with 38 C.F.R. § 3.103(c)(2) (2010), the Court will vacate the March 16, 2011, Board decision and remand the matter for readjudication consistent with this decision.

## I. FACTS

Mr. Procopio served on active duty in the U.S. Navy from September 1963 to August 1967, including service on board the U.S.S. *Intrepid* off the coast of Viet Nam.[1] R. at 862-63, 1025.

Mr. Procopio filed claims for VA benefits for diabetes mellitus and prostate cancer in October 2006 and October 2007, respectively. R. at 694-97, 999-1015. Specifically, Mr. Procopio asserted that those conditions were caused by his exposure to herbicides in service while aboard the U.S.S. *Intrepid* in "the Gulf of Tonkin and on the southern coast of Vietnam," which "was responsible for launching aircraft that sprayed . . . Agent Orange." R. at 696, 1009. A VA regional office attempted to obtain records to verify his allegations, but the National Personnel Records Center indicated that no such records existed. R. at 836. Consequently, in March 2009, the regional office sent Mr. Procopio a letter requesting additional information and evidence pertaining to his exposure to herbicides in service. R. at 368-75.

In response, Mr. Procopio submitted a statement indicating that, while aboard the U.S.S. *Intrepid*, he "quite frequently handled [herbicides] and the aircraft and equipment that was used to spray these chemicals" and drank "water that was pulled from the Gulf [of Tonkin] and 'purified' through co-distillation. . . ." R. at 362. He also submitted an undated study funded by the Australian Department of Veterans' Affairs (hereinafter the Royal Australian Navy study) indicating that "evaporative distillation [of seawater] may allow [dioxin] . . . to enter water supplies and to concentrate in the distillate," which "provides evidence that contamination via water may have been an important pathway for contamination of [Royal Australian Navy] personnel with [dioxin] on board ships." R. at 366.

In April 2009, the regional office denied Mr. Procopio's claims. R. at 354-60. He filed a timely Notice of Disagreement with that decision and included a May 2009 treatment note from his private physician, Dr. Gordon Grado, who opined that Mr. Procopio's conditions were associated with exposure to Agent Orange on the flight deck of the U.S.S. *Intrepid* and from water collected

---

[1]VA maintains a list of U.S. Navy and Coast Guard ships in operation off the coast of Viet Nam whose crew members were presumed to be exposed to Agent Orange. *See U.S. Navy and Coast Guard Ships in Vietnam*, U.S. DEP'T OF VETERANS AFFAIRS, http://www.publichealth.va.gov/exposures/agentorange/shiplist/index.asp (last visited June 4, 2012). The Court takes judicial notice of the fact that the U.S.S. *Intrepid* is not included on that list. *See Smith v. Derwinski*, 1 Vet.App. 235, 238 (1991) ("Courts may take judicial notice of facts not subject to reasonable dispute." (citing FED. R. EVID. 201(b))); *Brannon v. Derwinski*, 1 Vet.App 314, 316-17 (1991).

from evaporators on that ship. R. at 339-43. In October 2009, the regional office issued a Statement of the Case that continued to deny Mr. Procopio's claims because there was "no record that [he was] exposed to Agent Orange" and the U.S.S. *Intrepid* carried "A-1 Skyraiders used for bombing and rocketing targets–not spraying Agent Orange." R. at 308. Mr. Procopio subsequently perfected his appeal. R. at 281.

In September 2010, Mr. Procopio testified at a Board video conference hearing about his in-service exposure to herbicides. R. at 41-50. At that time, Mr. Procopio submitted a May 2010 treatment note from Dr. Grado that included an impression of "Agent [O]range exposure in Vietnam as [a] Blue Water Sailor"[2] and a treatment plan to "[s]upport [his] history of Agent Orange exposure in [the] military, as I have had many other patients who were 'Blue Water Sailors' with Agent Orange exposure while off-shore in Vietnam." R. at 34. Mr. Procopio subsequently submitted an October 2010 letter from Dr. Grado opining: "If Mr. Procopio was off the coast of Vietnam when Agent Orange was being used and he was therefore exposed to Agent Orange, then [his] prostate cancer can be associated with his Agent Orange exposure." R. at 22.

In March 2011, the Board issued the decision currently on appeal, which denied entitlement to VA benefits for prostate cancer and diabetes mellitus type II with edema, both to include as secondary to herbicide exposure. R. at 3-15. Specifically, the Board considered and rejected the Royal Australian Navy study as "too general in nature" and Dr. Grado's opinions as "conditional." R. at 12.

## II. PARTIES' ARGUMENTS

On appeal, Mr. Procopio essentially posits three arguments. First, he argues that the Board hearing officer violated her duty to "explain fully the issues and suggest the submission of evidence which the claimant may have overlooked" under 38 C.F.R. § 3.103(c)(2) (2010) and *Bryant v. Shinseki*, 23 Vet.App. 488, 496 (2010). Second, he asserts that the Board provided inadequate reasons or bases for finding that Mr. Procopio was not exposed to herbicides via water distillation

---

[2]In VA parlance, the term "blue water" refers to those veterans who served on ships in the waters off the coast of Viet Nam, whereas the term "brown water" refers to those veterans who served on vessels in the muddy, inland waterways of Viet Nam. *See generally Haas v. Peake*, 525 F.3d 1168 (Fed. Cir. 2008).

aboard the U.S.S. *Intrepid*. Third, he argues that the Secretary violated the duty to assist by failing to request that the Joint Service Records Research Center verify his exposure to herbicides and failing to make reasonable efforts to discover the method of water distillation used by U.S. Navy ships.

The Secretary disputes each of these arguments. First, he argues that the Board hearing officer adequately explained that exposure to herbicides was the issue on appeal and that Mr. Procopio had actual knowledge of the evidence necessary to substantiate his claim. Second, he contends that the Board adequately addressed the evidence of record, including the Royal Australian Navy study, in support of its finding that Mr. Procopio was not exposed to herbicides. Third, he argues that a Joint Service Records Research Center request is not required by the VA Benefits Adjudication Procedure Manual Rewrite (M21-1MR) in U.S. Navy ship cases and that there is no reasonable possibility of substantiating Mr. Procopio's claim through further investigation regarding water distillation.

## III. ANALYSIS
### A. Hearing Officer Duties

Mr. Procopio argues that the Board member who conducted the September 2010 video conference hearing failed to comply with the duties outlined in 38 C.F.R. § 3.103(c)(2) because she "asked no pertinent questions," "failed to explain that the chief factual issue in the case was whether [he] had actually been exposed to herbicide agents while serving aboard the U.S.S. *Intrepid* off the coast of Vietnam," and did not "suggest to [him] that he submit evidence" demonstrating such exposure. Appellant's Brief (Br.) at 9 (italics added). The Secretary responds that, "[b]ecause [Mr. Procopio] has maintained throughout the course of his appeal that he was exposed to [Agent Orange] aboard the [U.S.S. *Intrepid*], it borders on absurd to presume that [he] was unaware of the need to submit evidence showing he had actually been exposed to herbicide agents in service." Secretary's Br. at 9-10. The Secretary also contends that "any failure by the hearing officer to explain the need for evidence of direct herbicide exposure was harmless because the record demonstrates that [Mr. Procopio] had actual knowledge of the evidence necessary to substantiate his claim." *Id*. at 10. In his reply brief, Mr. Procopio asserts that his hearing testimony confirms that he was not aware that

4

he needed to submit evidence, other than Dr. Grado's opinions and his own lay statements, "that he had been in direct bodily contact with a substance that could reasonably be identified as Agent Orange." Appellant's Reply Br. at 1.

*1. Applicable Law & Regulatory History*

Section 3.103(c)(2) provides, in pertinent part: "It is the responsibility of the employee or employees conducting the hearings to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." 38 C.F.R. § 3.103(c)(2). As the Court explained in *Bryant*, this regulation imposes "two distinct duties" on hearing officers: (1) "a duty to fully explain the issues still outstanding that are relevant and material to substantiating the claim," and (2) a duty to "suggest that a claimant submit evidence on an issue material to substantiating the claim when the record is missing any evidence on that issue or when the testimony at the hearing raises an issue for which there is no evidence in the record."[3] 23 Vet.App. at 492, 496. Of particular importance to this appeal, the Court held that those duties applied with equal force to VA employees conducting hearings at the agency of original jurisdiction *and* the Board. *Id.* at 497-500.

The Secretary had an opportunity to appeal the Court's decision in *Bryant* to the U.S. Court of Appeals for the Federal Circuit, but elected not to do so. Rather, VA responded to that decision by publishing an August 2011 rule "amending its hearing regulations to clarify that the provisions regarding hearings before the Agency of Original Jurisdiction . . . do not apply to hearings before the Board of Veterans' Appeals. . . ." 76 Fed. Reg. 52,572, 52,572 (Aug. 23, 2011). VA explained that the Court's reliance in *Bryant* on *Douglas v. Derwinski*, 2 Vet.App. 435 (1992), which held that § 3.103(c) applied to Board hearings, was misplaced because that case was decided in the context of a different regulatory scheme. *Id.* at 52,573. Namely, pursuant to the regulations in effect at the time that *Douglas* was decided, "if an appellant chose to have a hearing before employees of the [agency of original jurisdiction] acting as a hearing agency for the Board, then he or she was not entitled to a subsequent hearing before a Board Member." *Id.* (citing 38 C.F.R. § 19.160 (1991)).

---

[3]The purpose of those duties is to "assure [the] clarity and completeness of the hearing record," a critical and sometimes marginalized component of a claimant's right to a fair and full adjudication before VA. 38 C.F.R. § 3.103(c)(2); *see Bryant*, 23 Vet.App. at 499.

Shortly after *Douglas*, VA "amended its hearing regulations to terminate the practice of [agency of original jurisdiction] personnel holding appellate hearings on the Board's behalf" because VA determined that "'a clear demarcation should exist between the conduct of hearings by the Board and hearings conducted by [Veterans Benefits Administration] employees at regional offices.'" *Id.* (quoting 58 Fed. Reg. 27,934, 27,934 (May 12, 1993)). According to VA, that 1993 amendment "reflected VA's intent to clearly distinguish hearings before [agencies of original jurisdiction] from hearings before the Board, including the duties of the respective VA personnel conducting the hearing," despite the fact that the final rule implementing that amendment did not mention § 3.103(c)(2). *Id.*; *see also* 58 Fed. Reg. at 27,934. Nevertheless, following that 1993 amendment, it became "standard VA practice and procedure" to apply § 3.103 only to hearings before the agency of original jurisdiction, and to apply 38 C.F.R. § 20.706 to hearings before the Board. 76 Fed. Reg. at 52,572. At that time, § 20.706 did not contain any explicit reference to the duties to fully explain the outstanding issues and to suggest the submission of overlooked evidence contained in § 3.103(c)(2). *See* 38 C.F.R. § 20.706 (1993) (requiring the presiding Board member, among other things, to "assure that the course of the hearing remains relevant to the issue, or issues, on appeal").

Following *Bryant*, VA amended § 3.103(c)(2) and § 20.706 to reflect its intent and practice with respect to hearings. VA explained that its amendment "merely clarifies current procedures for obtaining and conducting a hearing on a claim for VA benefits before the VA agency of original jurisdiction or the Board," "does not create new procedure," and represents "no substantive change." 76 Fed. Reg. at 52,573. Therefore, on August 23, 2011, VA promulgated the amended rule without notice and comment and it became effective that same day. *See* 5 U.S.C. § 553(b)(A) (exception to the notice-and-comment rulemaking requirements for "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice"); 76 Fed. Reg. at 52,572.

However, in April 2012, VA rescinded the August 2011 amendment because it determined that it should have been promulgated through the notice-and-comment procedure outlined in 5 U.S.C. §§ 553(b)-(c). 77 Fed. Reg. 23,128 (Apr. 18, 2012). VA explained that notice-and-comment rulemaking was required because the amendment "altered the language [of § 3.103(c)(2)] upon which the *Bryant* Court relied." *Id.* According to VA, this April 2012 rule was meant "to

6

return the regulations to the language in effect before August 23, 2011." *Id.* The rescission of that amendment became effective June 18, 2012. 77 Fed. Reg. at 23,128.

In light of these regulatory changes post-*Bryant*, both parties were ordered to file supplemental memoranda of law on which version of § 3.103(c)(2) is applicable to this case. Both parties asserted that the version of § 3.103(c)(2), as applied in *Bryant*, is for application here. *See* Secretary's Memorandum of Law (Mem.) at 2 ("As the Board hearing in this case took place in 2010, well before 38 C.F.R. § 3.103(c)(2) was amended in [August] 2011, the Secretary asserts that 38 C.F.R § 3.103(c)(2)[, as applied in *Bryant*,] is applicable to the Board hearing in this case."); Appellant's Mem. at 8-10 (noting that the August 2011 amended rule "does not apply to the March 16, 2011, Board decision on appeal," and that [§] 3.103(c)(2) as discussed in *Bryant* is for application").

The Court agrees. *See Abington Memorial Hosp. v. Heckler*, 750 F.2d 242, 244 (3d Cir. 1984) ("[V]acating or rescinding invalidly promulgated regulations has the effect of reinstating prior regulations." (citing *Action on Smoking & Health v. Civil Aeronautics Board*, 713 F.2d 795, 797 (D.C. Cir. 1983))); *see Paulsen v. Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005) ("The effect of invalidating an agency rule is to reinstate the rule previously in force."); *see also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("[A]dministrative rules will not be construed to have retroactive effect unless their language requires this result."); *Ervin v. Shinseki*, 24 Vet.App. 318, 322 (2011) ("If [the Secretary] did expressly speak to the temporal reach of the regulation, then the Court should apply the regulation as indicated by the language of the regulation."). Accordingly, the Court concludes that the Board member conducting Mr. Procopio's September 2010 video conference hearing was obligated to fully explain the outstanding issues in Mr. Procopio's appeal and suggest the submission of evidence that he might have overlooked. *See Bryant*, 23 Vet.App. at 492.

### *2. Application of § 3.103(c)(2) to Mr. Procopio's Appeal*

It is undisputed that Mr. Procopio's claims were denied by the regional office because of a lack of competent evidence of (1) in-service exposure to herbicides and (2) a nexus between any such exposure and his current disabilities. R. at 266-78, 288-309, 354-60. Therefore, pursuant to § 3.103(c)(2), the Board member was obligated to explain those issues to Mr. Procopio and to

suggest the submission of evidence relevant to those issues that he might have overlooked.  *See Bryant*, 23 Vet.App. at 496-97.  However, the Board member failed to do so.  Specifically, after administering an oath to Mr. Procopio and announcing that the record would be held open for 60 days to allow him to submit additional evidence, the Board member turned the hearing over to Mr. Procopio's representative and did not ask *any* questions or otherwise comment on his appeal.  In fact, after the veterans service organization representative finished eliciting testimony from Mr. Procopio, the Board member stated that she had no questions for Mr. Procopio and that she understood his contentions.  R. at 49.  She then thanked them both and concluded the hearing.  R. at 49-50.

Despite the Board member's minimal participation in the hearing, the Secretary asserts that the Board member complied with her duty to fully explain the outstanding issues in Mr. Procopio's claims because she stated at the outset of the hearing that the issues on appeal were entitlement to benefits for prostate cancer and diabetes mellitus, to include as a result of exposure to herbicides. R. at 42.  However, the Court in *Bryant* held that a similarly generic statement of the scope of the claims was insufficient to satisfy § 3.103(c)(2). 23 Vet.App. at 497 (holding that the Board member's statement that the issues on appeal included entitlement to benefits for bilateral hearing loss, tinnitus, squamous cell carcinoma, and frostbite of both feet did not satisfy § 3.103(c)(2) because the Board member did not inform the appellant that the outstanding elements necessary to substantiate those claims were proof of current disabilities and medical nexuses).  Accordingly, because the Board member in the instant case did not explain that Mr. Procopio's claims could only be substantiated by submitting evidence of in-service exposure to herbicides and a nexus between that exposure and his current disabilities (the missing elements in his claims), the Court concludes that the Board member failed to discharge her duty to fully explain the outstanding issues under § 3.103(c)(2). 23 Vet.App. at 496 ("[W]hen the [regional office] has denied a disability claim because there is no current disability, no nexus to service, or no incident in service, etc., then . . . the Board hearing officer's explanation and discussion should be centered on these issues.").

Next, with respect to the Board member's duty to suggest the submission of evidence that Mr. Procopio might have overlooked, the Secretary argues that any failure in that regard was harmless because "the record demonstrates that [Mr. Procopio] had actual knowledge of the evidence necessary to substantiate his claim."  Secretary's Br. at 10 (citing *Mayfield v. Nicholson*,

19 Vet.App. 103, 121 (2005) (holding that no prejudice exists where a claimant had actual knowledge of the evidence necessary to substantiate his claim), *rev'd on other grounds*, 444 F.3d 1328 (Fed. Cir. 2006)). In support of this argument, the Secretary notes that Mr. Procopio has consistently asserted and submitted evidence that he was exposed to herbicides aboard the U.S.S. *Intrepid*, his veterans service organization representative asked him during the hearing whether he was "exposed chemically" to herbicides in service (R. at 47), and the October 2009 Statement of the Case explained that "both the [Royal Australian Navy] study and Dr. Grado's medical opinion . . . were not in themselves sufficient to prove that he had actually been exposed to herbicide agents in service" (Secretary's Br. at 11). This argument, however, is misplaced for several reasons.

First, the Secretary is conflating the duty to fully explain the outstanding issues with the duty to suggest the submission of overlooked evidence. Even assuming that the foregoing evidence demonstrates that Mr. Procopio was aware that he needed to submit evidence of in-service exposure to herbicides and a nexus between that exposure and his current disabilities, his testimony clearly reflects that he was unaware of what type of evidence was necessary to prove those elements.

Specifically, Mr. Procopio's representative at the hearing requested that the record before the agency be held open for 60 days to allow Mr. Procopio to submit another nexus opinion from Dr. Grado that was based on a review of his service records because VA had determined that Dr. Grado's previous opinions based on his statements were inadequate to demonstrate a nexus. R. at 43-44. At that point, the Board member should have interjected, explaining that a nexus opinion alone would be insufficient to substantiate his claims without evidence of in-service exposure to herbicides, which generally cannot be provided by a private doctor decades after the alleged exposure. Further, the Board member should have recognized that, if Mr. Procopio is able to establish in-service exposure, he would be entitled to presumptive service connection for prostate cancer and diabetes mellitus type II under 38 C.F.R. § 3.309(e), alleviating the need for a nexus opinion.

Yet, the Board member did not alert Mr. Procopio that he was overlooking evidence of in-service exposure to herbicides. Instead, the Board member violated § 3.103(c)(2) by allowing Mr. Procopio to proceed under the assumption that submitting a nexus opinion alone would be sufficient to substantiate his claims–even though the hearing testimony indicated otherwise–and by failing to suggest evidence that he could submit to demonstrate exposure. *See Bryant*, 23 Vet.App. at 496

9

(explaining that a hearing officer "must not only be familiar with the claims file but also be engaged in the hearing process"); 38 C.F.R. § 3.103(c)(2) (stating that the purpose of the regulation is to "assure [the] clarity and completeness of the hearing record").

This is not to say that the Board member was required to preadjudicate Mr. Procopio's claim. As the Court explained in *Bryant*, "[p]readjudication or the weighing of conflicting evidence . . . is not required for a hearing officer to determine that evidence is not in the record with regard to a particular, material element of the claim." 23 Vet.App. at 493. Here, the regional office explicitly stated in its October 2009 Statement of the Case that there is "no record of [Mr. Procopio's] purported exposure to herbicides in service." R. at 309. A Statement of the Case is a document that "a hearing officer should have encountered in his review of the record, [that] will likely assist . . . in identifying the outstanding issues. *Bryant*, 23 Vet.App. at 496, n. 3. As such, the Board member did not need to weigh the evidence of record to determine that a letter regarding nexus alone would not substantiate Mr. Procopio's claim. Thus, the Board member should have informed Mr. Procopio that the issue of in-service exposure to herbicides was being overlooked, and the Board member's failure to do so thus constitutes error. *See id*. at 493-94 (explaining that a Board member "cannot ignore a lack of evidence in the record on a material issue and not suggest its submission, unless the record (or the claimant at [the] hearing) clearly shows that such evidence is not available").

Second, the Secretary's argument that the issuance of a pre-hearing Statement of the Case cures a Board member's failure to suggest the submission of overlooked evidence essentially eviscerates the duty required by § 3.103(c)(2). If the Secretary's argument were correct, then every claimant would have actual knowledge of the evidence necessary to substantiate a claim at the time of a Board hearing because Statements of the Case precede Substantive Appeals to the Board, *see* 38 U.S.C. § 7105, and the Board member, therefore, would never be obligated to perform that duty. *Cf. Cuevas v. Principi*, 3 Vet.App. 542, 548 (1992) (holding that a pre-hearing notice letter identifying the evidence necessary to substantiate a claim was not sufficient to satisfy § 3.103(c)(2)). Consequently, the Court must reject the Secretary's proposed prejudicial error analysis because it renders a portion of § 3.103(c)(2) a legal nullity. *See, e.g.*, *Buchanan v. Nicholson*, 451 F.3d 1331, 1336 (Fed. Cir. 2006) (rejecting the Secretary's proffered interpretation because it "would render portions of the statutes and regulations [governing claims for VA benefits] meaningless").

Based on the foregoing, the Court concludes that the Board member conducting the September 2010 video conference hearing did not comply with her duties to apprise Mr. Procopio of the elements of his claims that still needed to be proven and to suggest the submission of evidence thereof that he might have overlooked. *See Bryant*, 23 Vet.App. at 496-97. As explained above, the Board member made no efforts to explain to Mr. Procopio that he needed to submit evidence regarding his in-service exposure to herbicides, despite testimony indicating that he was unaware that this element of his claims remained outstanding and that he was confused about what evidence was necessary to substantiate his claims. *See id*. at 499 (explaining that "prejudice arises from the failure of the hearing officer to assure the 'clarity and completeness of the hearing record,' and the lost additional opportunity to try and submit such evidence before [the] claim [is] finally adjudicated" (quoting 38 C.F.R. § 3.103(c)(2))) (internal citations omitted). Therefore, vacatur and remand is warranted. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998).

## B. Other Arguments

Although the Court has already determined that remand is necessary, the Court will nevertheless address Mr. Procopio's remaining arguments. *See Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (holding that the Court may address an appellant's other arguments after determining that remand is warranted to provide guidance to the Board).

### 1. Reasons or Bases

Mr. Procopio contends that the Board provided an inadequate statement of reasons or bases for its determination that he was not exposed to herbicides in service. Specifically, Mr. Procopio points to a particular passage in the Board decision discussing "a similar Australian study" that VA previously reviewed and determined was insufficient to support an extension of the presumption of exposure to herbicides to similarly situated veterans, and asserts that "the Board's error was essentially [adjudicating] whether the evidence presented by [Mr. Procopio] was sufficient to warrant *presumptive* service connection for *all* veterans in his circumstances, rather than *direct* service connection based on the unique facts of his claim." Appellant's Br. at 12 (emphasis in original). This argument is not supported by the record.

Although Mr. Procopio is correct that the cited passage pertains to presumptive service connection, he ignores the fact that the Board separately considered whether the Royal Australian Navy study that he submitted was sufficient to demonstrate exposure to herbicides in service for the purposes of establishing direct service connection and determined that it was not. To that end, the Board recited the law with respect to the probity of medical treatise evidence and noted that "[t]he article in the current case does not provide statements for the facts of [Mr. Procopio]'s specific case"–namely, it did "not show to any degree of specificity that [he] was exposed to Agent Orange while drinking water on the [U.S.S. *Intrepid*]." R. at 12. Consequently, the Board concluded that the Royal Australian Navy study was "too general in nature to provide, alone, the necessary evidence to show that [Mr. Procopio] was exposed to Agent Orange while onboard [that ship]." *Id.*; *see also Haas v. Peake*, 525 F.3d 1168, 1194 (2008) (noting VA scientists' and experts' problems with the Royal Australian Navy study, as enumerated in 73 Fed. Reg. 20,566, 20,568 (Apr. 16, 2008)). Because the foregoing discussion was sufficient to enable Mr. Procopio to understand the precise basis for the Board's decision and to facilitate review in this Court, the Court concludes that the Board's statement of reasons or bases was not inadequate in that regard. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 57 (1990).

### 2. Duty To Assist

Mr. Procopio also argues that the Board's determination that VA satisfied its duty to assist him in substantiating his claims was clearly erroneous because VA (1) "failed to comply with its own procedures for investigating claimed exposure to herbicides in service outside of the landmass of Vietnam," and (2) made "no effort . . . to confirm whether the water distillation method described

in the [Royal] Australian Navy stud[y] was used aboard the U.S.S. *Intrepid*."[4]  Appellant's Br. at 15, 19 (italics added).

With respect to Mr. Procopio's first contention, the M21-1MR directs the regional office, "[i]n all cases where a [v]eteran claims that he/she served on a ship that stored or transported herbicides," to place in the veteran's claims file a copy of the memorandum prepared by the Joint Service Records Research Center stating that it "has no evidence to support [an allegation] of herbicide exposure based solely on shipboard service." M21-1MR, pt. IV, subpt. II, ch. 2, § C-10(l). Although the Secretary concedes that this memorandum was not placed in Mr. Procopio's claims file, Mr. Procopio fails to demonstrate prejudice. *See Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) (appellant bears burden of demonstrating prejudice on appeal).

The memorandum is intended to serve as a "substitute for individual inquiries to the [VA Compensation and Pension] Service's Agent Orange mailbox and to the [Joint Service Records Research Center]" because the Joint Service Records Research Center "has found no evidence that indicates Navy . . . ships transported tactical herbicides from the United States to the Republic of Vietnam or that ships operating off the coast of Vietnam used, stored, tested, or transported tactical herbicides," "cannot document or verify that a shipboard Veteran was exposed to tactical herbicides based on contact with aircraft that flew over Vietnam or equipment that was used in Vietnam," and "can provide no evidence to support a Veteran's claim of exposure to tactical herbicide agents while serving aboard a Navy . . . ship during the Vietnam era." M21-1MR, pt. IV, subpt. II, ch. 2, §§ C-10(l), (m).  Consequently, any remand to the Board to place that memorandum in Mr. Procopio's claims file or for a Joint Service Records Research Center request would be futile because it has already been determined that no such records exist. *See Soyini v. Derwinski*, 1 Vet.App. 540, 546

---

[4]The Court notes that Mr. Procopio does not argue that the Board had a duty to seek clarification of Dr. Grado's October 2010 letter. *See Savage v. Shinseki*, 24 Vet.App. 259, 270 (2011) (holding that VA has a duty to clarify ambiguous private medical opinions in limited circumstances, where "the missing information is relevant, factual, and objective"); *Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 300 (2008) (explaining that the Court's prior caselaw "establish[es] that the content of information and evidence received by VA may require an appropriate response, consistent with the duty to assist"); *Daves v. Nicholson*, 21 Vet.App. 46, 51-52 (2007) ("Where . . . the medical examiner specifically states that a medical opinion cannot be provided without information not currently available, the Secretary's duty to assist requires that the Secretary determine whether that information may be reasonably obtained, and if so, to make efforts to obtain it. . . ."). Therefore, the Court deems any such argument abandoned. *See Grivois v. Brown*, 6 Vet.App. 136, 138 (1994) (holding that issues or claims not argued on appeal are considered abandoned).

(1991) (holding that the Court need not order a remand based on a technical error of law where a remand would unnecessarily impose additional burdens on the Board with no benefit flowing to the veteran). Therefore, the Court concludes that Mr. Procopio has failed to carry his burden of demonstrating that VA committed prejudicial error in failing to include that memorandum in his claims file. *See* 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Sanders*, *supra*; *Conway v. Principi*, 353 F.3d 1369, 1374 (Fed. Cir. 2004).

With respect to his second contention, Mr. Procopio acknowledges that VA previously had made an inquiry and was "unable to obtain official confirmation . . . from the Department of Defense" that *any* U.S. Navy ships used that process, 73 Fed. Reg. 20,363, 20,364 (Apr. 15, 2008), but nevertheless argues that he "fails to see why the U.S. Navy, pursuant to a clear request based on the facts of this particular case, would be unable to determine whether the U.S.S. *Intrepid* utilized [that] type of water distillation. . . ." Appellant's Reply Br. at 5 (italics added). Although this may be true, he fails to identify–and the record does not reflect–where in the record he requested that VA obtain information as to whether the U.S.S. *Intrepid* used the evaporative distillation process described in the Royal Australian Navy study. He also fails to demonstrate why, given the response to VA's generic request regarding use of that process by U.S. Navy ships, VA should have submitted an additional, more tailored, request for information, specific to the U.S.S. *Intrepid*. *See Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (Board must address all issues raised by the claimant or reasonably by the record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009); *see also* 38 U.S.C. § 5103A(b)(1) ("[T]he Secretary shall make reasonable efforts to obtain relevant records (including private records) that the claimant *adequately identifies to the Secretary . . . .*" (emphasis added)); *Hilkert v. West*, 12 Vet.App. 149, 151 (1999) (en banc) *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table). Of course, in light of the need to remand this matter, Mr. Procopio may pursue this matter on remand. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (noting that, on remand, claimants may present, and the Board must consider, any additional evidence and argument in support of remanded matters).

On remand, Mr. Procopio is free to submit additional evidence, including the types of alternative evidence of herbicide exposure identified in his reply brief, and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay*, *supra*.

14

"A remand is meant to entail a critical examination of the justification for the decision" by the Board. *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991). In addition, the Board shall proceed expeditiously, in accordance with 38 U.S.C. § 7112 (expedited treatment of remanded claims).

### IV. CONCLUSION

Upon consideration of the foregoing, the March 16, 2011, Board decision is VACATED and the matter is REMANDED for readjudication consistent with this decision.