GREENBERG, Judge:
I dissent. At issue in this case was a veteran-friendly regulation, consistent with Congressional intent as old as the Republic.[3] See Hayburn’s Case, 2 U.S. (2. Dall.) 409, 410 n. *, 1 L.Ed. 436 (1792) (“[T]he objects of this act are exceedingly benevolent, and do real honor to the humanity and justice of Congress.”); see 1 Stat. 243 (“An Act to provide for the settlement of the Claims of Widows and Orphans barred by the limitations heretofore established, and to regulate the Claims to Invalid Pensions.”). This veteran died while seeking the hearing before the Board that he believed he had been denied. He died prior to the November 14, 2014, issuance of the Court’s decision.[4] His circumstances are a reminder that many veterans are at risk of dying before receiving the full and fair *230 adjudications of their claims to which they are entitled. Circumstances such as their advanced age and declining health, see Fabio v. Shinseki, 26 Vet.App. 404 (2013), or the fatal consequences of their physical and psychological wounds, see Veterans for Common Sense v. Shinseki, 678 F.3d 1013 (9th Cir.2012), are palpable.
I acknowledge that the veteran’s surviving spouse has decided not to request substitution, potentially to prevent the underlying Board decision in this case from acting as a barrier to an accrued benefits claim. I also acknowledge the Court’s voluntary adoption of the Article III case-or-controversy requirement, and its invocation of that principle here, where a decision and accompanying opinions have already- been published. See Mokal v. Derwinski, 1 Vet.App. 12, 15 (1990) (adopting “as a matter of policy the jurisdictional restrictions of the ' Article III case or controversy rubric,” but “recognizing] the unsettled nature of the law in this area” and “not attempting] to resolve the controversy” definitively).
The regulation, 38 C.F.R. § 3.103(c)(2), which provides veterans the right to a hearing, must be applied expansively and in a manner commensurate with the importance of Board hearings to veterans. The Court should have decided this case consistent with the propositions that (1) the hearing is an essential aspect of a veteran’s claim and should be subject to exacting scrutiny to ensure its fairness and compliance with the law; (2) VA must consider referrals for extraschedular rating in all compensation claims, and that issue must be discussed at the hearing; and (3) hearing errors should be presumptively prejudicial and should not be overlooked based upon the Secretary’s or this Court’s intuition that all evidence that could have been submitted was submitted.
When a veteran seeks a hearing before the Board, “[i]t is the responsibility of the [VA] employee ■... conducting the hearings to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant’s position.” 38 C.F.R, § 3.103(c)(2) (2014). The hearing officer must “fully explain the issues still outstanding that are relevant and material to substantiating the claim” and “must suggest that a claimant submit evidence on an issue material to substantiating the claim when the record is missing any evidence on that issue or when the testimony at the hearing raises an issue for which there is no evidence in the record.” Bryant v. Shinseki, 23 Vet.App. 488, 496 (2010) (per curiam). A “generic statement of the scope of the claims” will not suffice; the Board must explain why the claim was denied, i.e., “the missing elements in his claims.” Procopio v. Shin-seki, 26 Vet.App. 76, 81 (2012). In fact, it was Congress that guaranteed veterans, by statute, the opportunity for a hearing before the Board. 38 U.S.C. § 7107(b) (“The Board shall decide any appeal only after affording the appellant an opportunity for a hearing.”).
The Secretary’s regulation provides that a Board member “may also be known as a Veterans Law Judge,” 38 C.F.R. § 19.2, but members of the Board are appointed by the Secretary and thus are VA employees. Members of the Board are not independent from, but in fact must ensure compliance with, the Congressional mandate that VA “make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the ... claim.” 38 U.S.C. § 5103A(a).
VA must consider extraschedular referral for every veteran’s compensation claim. See 38 C.F.R. § 3.321(b)(1) (2014); see also Thun v. Peake, 22 Vet.App. 111, 115- *231 116 (2008). Accordingly, extraschedular consideration is an issue that must be fully explained at a Board hearing. See Bryant, 23 Vet.App. at 496.
When a Board member fails to explain the issues on appeal or suggest the submission of additional evidence, it is impossible to know what the veteran could have said or submitted in support of the claim.When the Court cannot say with confidence whether the veteran could have submitted additional evidence or argument to support the claim in the absence of the Board hearing officer’s error, “prejudice arises from the failure of the hearing officer to assure the clarity and completeness of the hearing record .., and the lost additional opportunity to try and submit such evidence before his claim finally was adjudicated.” Id. at 499 (internal quotation marks and citations omitted) (citing Wagner v. United States, 365 F.3d 1358, 1365 (Fed.Cir.2004) (“Where the effect of an error on the outcome of a proceeding is unquantifiable ..., we will not speculate as to what the outcome might have been had the error not occurred”)).
Contrasting with these requirements imposed by statute, regulation, and legal precedent, the case presented by the veteran was one where the presiding VA employee provided no statement concerning the issue of referral for extraschedular consideration, which was an issue on appeal; no explanation of why the regional office denied the veteran’s claims below; no suggestion, in light of the mention of the veteran’s prior employment as a hospital administrator, that the veteran provide evidence of the impact of his disability on that employment; and no discussion of the severity of the veteran’s right ear hearing loss, also at issue. See R. at 246-57. The Board member in the veteran’s ease failed to make any statement suggesting that the veteran obtain evidence related to an issue apparent from the record or mentioned at the hearing, much less perform his specific duties.
That Board member’s errors prevented the veteran from effectively participating in his own case. ■ The veteran could never have demonstrated with rigorous specificity the harm he suffered — the evidence he certainly would have submitted or the arguments he absolutely would have raised — to show prejudice, because the Board member’s failures kept him from knowing how to appropriately pursue his claim. The VA claims adjudication process is nonadversarial. The veteran is not expected to arrive at VA prepared to take on the agency. Instead, VA is supposed to reasonably assist the veteran in making the best claim he or she can, including explaining the law. See 38 U.S.C. §§ 5103, 5103A; Robinson v. Peake, 21 Vet.App. 545, 559 (2008) (Schoelen, J., dissenting) (“VA’s duty to assist the claimant is the cornerstone of the nonadversarial claims adjudication system the Agency is meant to operate”). Applying strict prejudicial error rules adopted for the adversarial trial system, where parties are expected to fend for themselves, harms a veteran when the assistance aspect of the VA nonadver-sarial adjudication system breaks down, as it did in this veteran’s case, and exposes him or her to potentially devastating consequences for merely trusting VA to perform its duties. See Shinseki v. Sanders, 556 U.S. 396, 412, 129 S.Ct. 1696, 173 L.Ed.2d 532 (2009).
The veteran who elects to personally appear before a Board member at a hearing, often without legal representation, deserves the opportunity to fully present his or her best case and personally persuade the authority that will decide the claim that the benefits sought are warranted. Although the hearings are nonadversarial, they effectively represent the veteran’s *232 day in court, when the veteran may personally vindicate his or her position before the Board member. The hearing is a critical juncture in the VA claims process, but when the Board member fails to engage with the veteran and explain the case, as happened here, it becomes a hollow charade. The Court should not have overlooked such an error when the veteran plausibly suggested that relevant evidence could have been submitted' in the absence of the error. Here, the error was clear, but the effect of whatever evidence the veteran could marshal is anything but clear.
The late veteran served in the Pacific during World War II as a member of the Marine Corps. He was on board the carrier U.S.S. Wasp under unremitting enemy kamikaze attack. He never left his post. He never stopped engaging the enemy by firing his anti-aircraft weapon. He was 89 years old when he died. During the pen-dency of his appeal, he had requested that his claim be expedited, “because of my age and frailty.” R. at 25.
In the immortal words of one of America’s great war poets: Once to every man and nation comes the moment to decide. The veteran decided to serve his nation in combat, bravely and in a manner that brought a valor commendation.' Nearly 70 years passed. The Secretary violated the law and his own regulation. Although this veteran has died, his circumstances should be remembered in light of the many future veterans waiting them turns to speak to the Board. This Court must not lose sight of this veteran’s reality and the reality of all veterans who continue to suffer harmful delays as a result of VA error.

. I consider the issues in this case to include all issues, briefed by the parties or raised sua sponte, that would contribute to receipt of a remedy at law or equity. See, e.g., Fabio v. Shinseki, No. 11-3072, 2013 WL 3899372, at *1 (Vet.App. July 30, 2013) (nonprecedential order for supplemental briefing of issues, to include the broad issue of “[w]hether there exists an equitable remedy this Court may consider'’); Gazaille v. McDonald, 27 Vet.App. 205 (2014) (addressing matters of both law and equity in resolving appellant’s appeal).

. I observe that the Supreme Court has in some instances announced its decision months before issuing the full opinions in the case. See, e.g., Ex parte Quirin, 317 U.S. 1, 6-7, 63 S.Ct. 2, 87 L.Ed. 3 (1942) (‘‘[T]he public interest required that we consider and decide .,. without any avoidable delay.”); Ex parte Milligan, 71 U.S. (4 Wall.) 2, 18 L.Ed. 281 (1866).