Citation Nr: 1722259 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 10-42 967 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Huntington, West Virginia


THE ISSUES

1. Entitlement to an initial rating in excess of 30 percent for posttraumatic stress disorder (PTSD) prior to April 13, 2016, and in excess of 50 percent thereafter.

2. Entitlement to a total disability rating due to individual unemployability (TDIU).


REPRESENTATION

Appellant represented by: Jan Dils, Esq. 


WITNESSES AT HEARING ON APPEAL

Appellant and his wife




ATTORNEY FOR THE BOARD

C. B. Kass, Associate Counsel


INTRODUCTION

The Veteran served on active duty from June 1966 to February 1970.

This matter comes before the Board of Veterans' Appeals (Board) from a November 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Huntington, West Virginia, which granted service connection for PTSD, evaluated at 10 percent disabling from August 6, 2009.

In September 2010, the RO increased his rating to 30 percent, effective August 6, 2009. 

In December 2016, the RO increased his rating to 50 percent, effective April 13, 2016. 

The Veteran and his representative testified before a Veterans Law Judge in August 2014. However, the Veterans Law Judge who conducted the August 2014 hearing is no longer employed by the Board. Under 38 C.F.R. § 19.3(b), this appeal may be reassigned to another Veterans Law Judge for a decision. A transcript of the hearing has been associated with the record.

The Board remanded this claim in May 2014 and October 2014. The claim has since returned for further appellate consideration.


FINDINGS OF FACT

1. Prior to January 18, 2012, the Veteran's PTSD manifested with occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks due to depressed mood, anxiety, and difficulty sleeping. 

2. From January 18, 2012, the Veteran's PTSD manifests with occupational and social impairment with deficiencies in most areas due to depressed mood, anxiety, nightmares, difficulty sleeping, episodic suicidal ideation, anger, irritability, and isolation. 

3. With resolution of the doubt in the Veteran's favor, the Veteran's PTSD is so severe that it has precluded him from obtaining and maintaining substantially gainful employment.


CONCLUSIONS OF LAW

1. Prior to January 18, 2012, the criteria for a rating in excess of 30 percent for PTSD are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.130, DC 9411 (2016). 

2. The criteria for a 70 percent rating, but no higher, for PTSD are met, from January 18, 2012. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.102, 4.130, DC 9411 (2016).

3. The criteria for the assignment of a TDIU are met from January 18, 2012. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 3.340, 3.341, 4.16 (2016).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Veterans Claims Assistance Act (VCAA)

As provided by the Veterans Claims Assistance Act of 2000 (VCAA), VA has duties to notify and assist a claimant in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§3.102, 3.156(a), 3.159, 3.326(a) (2016). VA has complied with its duty to assist in developing this claim. 38 C.F.R. § 3.159(c). Indeed, service treatment records (STRs), post-service VA treatment records, lay statements in support of the claim, and hearing transcript have been associated with the claims files. He has also been provided with VA examinations that are adequate for adjudication. Barr v. Nicholson, 21 Vet. App. 303, 311 (2007). 

In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the Court held that 38 C.F.R. 3.103 (c)(2) requires that the hearing officer who chairs a hearing fulfill two duties to comply with the above the regulation. These duties consist of (1) the duty to fully explain the issues and (2) the duty to suggest the submission of evidence that may have been overlooked. The Board hearing complied with the provisions of Bryant. 

Here, the August 2014 Board hearing was in compliance with the provisions of Bryant. Neither the Veteran nor his representative asserted that the VLJ failed to comply with 38 C.F.R. § 3.103 (c)(2) or identified any other prejudice in the conduct of the hearing. In addition, the lay statements and submissions during the course of the appeal, as well as those of the Veteran's representative, demonstrate actual knowledge of the elements and evidence necessary to substantiate the claim decided herein because the submissions and statements speak to why the Veteran believes that his hearing loss disability is related to service. As such, the Board finds that the VLJ complied with the duties set forth in Bryant and the claim may be adjudicated based on the current record. Cf. Procopio v. Shinseki, 26 Vet. App. 76 (2013).

The Veteran has not identified, and the record does not otherwise suggest, any additional existing evidence that is necessary for a fair adjudication of this claim that has not been obtained and that is obtainable. He has received all essential notice and has had a meaningful opportunity to participate effectively in the development of this claim. See Conway v. Principi, 353 F.3d 1369 (Fed. Cir. 2004). VA's duties to notify and assist him with this appeal have been satisfied.

II. Increased Rating - PTSD

Disability ratings are assigned in accordance with VA's Schedule for Rating Disabilities and are intended to represent the average impairment of earning capacity resulting from disability. See 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. §§ 3.321 (a), 4.1 (2016). Separate diagnostic codes (DCs) identify the various disabilities. See generally 38 C.F.R. Part 4 (2016). If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3. 

Consistent with the facts found, the rating may be higher or lower for periods of the time under review on appeal, that is, the rating may be "staged." See Fenderson v. West, 12 Vet. App. 119 (1999); Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007).

The Veteran's PTSD is rated as 50 percent disabling. During the appeal period, he was previously rated at 30 percent disabling and he is seeking a higher rating for the entire appeal period. 

A 30 percent rating is warranted if there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, or mild memory loss (such as forgetting names, directions, recent events). Id.

A 50 percent evaluation is warranted where there is occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands, impairment of short and long-term memory; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and, difficultly in establishing and maintaining effective work and social relationships. Id. 

A 70 percent rating is prescribed when there is evidence of occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control (such as unprovoked irritability with periods of violence); spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances (including work or a work like setting); and inability to establish and maintain effective relationships. Id.

A 100 percent rating is prescribed when there is evidence of total occupational and social impairment due to such symptoms as: gross impairment in thought processes or communication; persistent delusions or hallucinations, grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation as to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

The list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant the rating, but are not meant to be exhaustive, and the Board need not find all or even some of the symptoms to award a specific rating. Mauerhan v. Principi, 16 Vet. App. 436, 442-3 (2002). However, a veteran may only qualify for a given disability rating under § 4.130 by demonstrating the particular symptoms associated with that percentage, or others of similar severity, frequency, and duration, and that such symptoms have resulted in the type of occupational and social impairment associated with that percentage. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 117-18 (Fed. Cir. 2013).

Regarding occupational impairment, the Veteran reported that he retired in 1993 and he had not been employed since that time. In January 2012, he stated that he never left a job for emotional problems. In January 2017, the Veteran stated that he last worked 23 years ago because his company wanted to get rid of him. In addition, he gave the impression that he may have been a contentious person with management and the union. 
 
With respect to social impairment, in the October 2009 VA examination, he reported that he had 12 to 15 close friends and had contact with many of them two to three times a week. In April 2016, the Veteran indicated that he did not like, did not want to talk to, and did not get along with anyone. Conversely, he noted that he had three friends that he talked to two to three times a week. 

In October 2009, a VA examiner diagnosed the Veteran with mild to moderate PTSD. The Veteran was married to his wife of 46 years and reported a stable and loving relationship. They spent time together and shared household responsibilities, like shopping, finances, and chores. The Veteran reported a positive relationship with his children, and continued family holiday traditions and vacations. He also stated that he had regular contact with his siblings and maintained close relationships with them. The Veteran had 12 to 15 close friends and had contact with many of them two to three times a week. He enjoyed participating in church activities. The Veteran stated that he would help church members with roof, electrical, or water problems that they had in their homes. He reported occasionally becoming overwhelmed with tasks and getting irritable, but he did not have difficulty with any tasks. He also had trouble sleeping and staying asleep. 

The Veteran had occupational and social impairment due to mild or transient symptoms which decreased work efficiency and ability to perform occupational tasks only during periods of significant stress. His symptoms were controlled by continuous medication. The examiner found the Veteran very talkative and cooperative. His thoughts were goal-oriented and organized, and his judgment and insight were fair. 

In January 2012, Dr. J.A. conducted a mental status examination with the Veteran. The Veteran reported that his wife was bipolar. He said that he avoided thoughts, feelings, or conversations associated with his stressor, except with two good friends. The Veteran reported memory difficulties but demonstrated detailed recall. He described his symptoms as sleep problems, anger difficulties, problems with concentration, startle reactions, and hypervigilance. He indicated that his current distress was an 8 on a scale of 1 to 10, and his general function was a 9. He worked in coal mining for 23 years. He stated he had anger problems and resentment, and that he was highly obsessive compulsive, stubborn, and went by the book. However, he stated that he never left a job for emotional problems. The examiner described the Veteran as stubborn, controlling, compulsive, and a somewhat paranoid individual. He found the Veteran's memory intact, judgment was average, and his insight was limited. 

In April 2016, the Veteran was afforded a VA examination and diagnosed with chronic PTSD and major depressive disorder, moderate with recurrent without psychotic features. The Veteran was married and his wife was admitted to the hospital the evening before the examination. He spent most of his time with her or their dog. He reported not getting along with his family but they know him better, and that they are actually pretty close. The Veteran also indicated not liking, not wanting to talk to, and not getting along with anyone. However, he noted that he had three friends that he talked to two to three times a week. The Veteran explained that his symptoms were depression, persistent irritability, nightmares and problems with his memory. He retired in 1993 and he had not been employed since that time.

The Veteran had occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with normal routine behavior, self-care and conversation. His understanding and memory, concentration and persistence, and adaption were mildly impaired. His ability for social interaction, such as getting along with coworkers, was moderately impaired. The examiner noted the Veteran had symptoms of chronic sleep impairment, difficulty in establishing and maintaining effective work and social relationships, impaired impulse control, and intermittent inability to perform activities of daily living. His affect was irritable and his mood was cynical, pessimistic. He presented casually dressed and he drove to the appointment by himself.

In September 2016, the Veteran reported his mood as good. He continued to have nightmares but was sleeping six to seven hours a night. He was casually dressed, had good hygiene and eye contact. 

In December 2016, Dr. J.A. filled out a disability benefits questionnaire. He indicated several symptoms but no explanation was provided for his opinion that the Veteran had occupational and social impairment with deficiencies in most areas due to depression, anxiety, nightmares, difficulty sleeping, memory deficiencies, hypervigilance, suicidal ideation, and a lack of impulse control. 

In January 2017, Dr. J.A. provided an independent medical evaluation. The Veteran reported anger, insomnia, nightmares, irritability, isolation, hypervigilance and thoughts of harming others. He also admitted that he thought about killing himself but had not made any attempts. The examiner noted the Veteran was very hostile, constantly thinking about shooting or killing people and very touchy. There were also reports of frightening thoughts ending in violence committed by the Veteran. The Veteran had contempt for anyone he viewed as irresponsible. Based on his aggression and history with fighting, the examiner believed the Veteran could be a danger to others at any time. His memory was intact, judgment was average, and his insight was fair. In discussing his past employment, the Veteran stated that he last worked 23 years ago because his company wanted to get rid of him. The Veteran gave the impression there may have been a contentious person with management and the union. 

The Board considered Dr. J.A.'s disability benefits questionnaire and independent medical evaluation. However, these assessments were in direct conflict with the Veteran's most recent treatment record from only a month earlier, which stated that the Veteran reported his mood as good and his sleep had increased to seven hours a night. Although conflicting, the evidence is at least in equipoise. 

Based on the record, the Board finds that prior to January 18, 2012, a 30 percent is the appropriate rating; and since January 18, 2012, a 70 percent is the appropriate rating for the Veteran's PTSD. January 18, 2012 is the earliest it is factually ascertainable that an increase is warranted. Assigning any date prior would be an exercise in speculation. 

Prior to January 18, 2012, the Veteran's PTSD manifested with occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks due to depressed mood, anxiety, and difficulty sleeping. The October 2009 VA examiner found that the Veteran had occupational and social impairment due to mild or transient symptoms which decreased work efficiency and ability to perform occupational tasks only during periods of significant stress. His symptoms were controlled by continuous medication. The examiner found the Veteran very talkative and cooperative. His thoughts were goal-oriented and organized, and his judgment and insight were fair. 
However, the Veteran did not suffer from the symptoms associated with a 50 percent rating during this period. Moreover, his PTSD was described as mild to moderate, consistent with a 30 percent rating. 

However, the evidence shows that his PTSD since January 18, 2012 causes occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: depressed mood, anxiety, nightmares, difficulty sleeping, episodic suicidal ideation, anger, irritability, and isolation. 38 C.F.R. § 4.130, DC 9411. The next higher, 100 percent rating, is not demonstrated by the evidence of record, as the Veteran's PTSD is not manifested total occupational and social impairment. 8 C.F.R. § 4.130, DC 9411. Although the Veteran is totally occupationally impaired, this is being addressed via TDIU and is merely another avenue to a total rating, which is being granted. Moreover, he reported that he had friends, his mood was good, and he was sleeping six to seven hours a night. Thus, total social impairment is not shown. In sum, the Board finds that his PTSD causes impairment with deficiencies in most areas. 

The Board considered whether this claim should be referred for an extraschedular rating. 38 C.F.R. § 3.321 (b) (2016). His PTSD symptoms are rated based on the extent of social and occupational impairment they cause. The symptoms that are listed under the criteria applicable to DC 9411 serve as mere examples of the type and degree of the symptoms, and their effects, which would justify a particular rating, and are not intended to constitute an exhaustive list. Mauerhan v. Principi, 16 Vet. App. 436, 442-44 (2002). Further, the Board does not find that referral for extraschedular consideration is warranted because his symptoms are not unusual and are adequately described by the rating criteria. Thun v. Peake, 22 Vet. App. 111 (2008). Thus, all of his symptoms are contemplated by the Rating Schedule, and were taken into consideration when assigning a 70 percent rating. 

III. TDIU

VA will grant a total rating for compensation purposes based on unemployability when the evidence shows that the Veteran is precluded, by reason of his service-connected disabilities, from obtaining and maintaining any form of substantial gainful employment consistent with his education and occupational experience. 
38 C.F.R. §§ 3.340, 3.341, 4.16 (2016). 

The Veteran must meet specific requirements before consideration of whether the evidence demonstrates unemployability. If the Veteran has only one service-connected disability, it must be rated at 60 percent or more. If the Veteran has two or more service-connected disabilities, at least one must be rated at 40 percent or more, and there must be sufficient additional disability to bring the combined rating to 70 percent or more. Id. 

In this case, the Veteran's combined disability rating was 80 percent, effective from January 18, 2012. The Veteran is service connected for PTSD, which is rated at 70 percent since January 18, 2012; hearing loss, which is rated at 20 percent since August 6, 2009; and tinnitus, which is rated at 10 percent since August 6, 2009. Therefore, he met the schedular criteria of a TDIU in January 2012. See 38 C.F.R. §§ 4.25, 4.26.

After establishing a date for the TDIU, the Board must address whether the Veteran's service-connected disabilities precluded him from obtaining or engaging in substantially gainful employment. The central inquiry is, "whether the Veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). 

A review of the evidence indicates the Veteran retired in September 1993 from his position as mine foreman. He has not reported any substantial gainful employment or seeking any substantial gainful employment since that time. His work history shows continued employment in the coal mining industry since the 1970s and a high school level education. A January 2015 letter from the Veteran's representative stating that the Veteran's former employers were no longer in business and could not supply the information about his previous employment. There is no indication that he has any additional training or education that is transferable to a different position. 

The law is clear. Pursuant to the "benefit-of-the-doubt" rule, where there is "an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter," the Veteran shall prevail upon the issue. 38 U.S.C.A. § 5107 (West 2014). Here, the Board finds that the aforementioned evidence discussed in the assignment of a 70 percent rating is sufficient to place the relevant evidence, at a minimum, in a state of equipoise as to whether the Veteran's service-connected disabilities preclude employment. The Board therefore concludes that, with the benefit of the doubt resolved in the Veteran's favor, a grant of TDIU from January 18, 2012 is warranted. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990) ("[T]he 'benefit of the doubt' standard is similar to the rule deeply embedded in sandlot baseball folklore that 'the tie goes to the runner' . . . . [I]f . . . the play is close, i.e., 'there is an approximate balance of positive and negative evidence,' the veteran prevails by operation of [statute].").








ORDER

A rating in excess of 30 percent for PTSD prior to January 18, 2012, is denied.

A rating of 70 percent, but no higher, for PTSD from January 18, 2012, is granted. 

A TDIU rating since January 18, 2012, is granted, subject to the laws and regulations governing the payment of monetary benefits.



____________________________________________
BRADLEY W. HENNINGS
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs