HAGEL, Judge:
Nancy C. Gazaille appeals through counsel an October 10, 2012, Board of Veterans’ Appeals (Board) decision that denied entitlement to dependency and indemnity compensation benefits. Mrs. Gazaille’s Notice of Appeal was timely, and the Court has jurisdiction to review the Board decision pursuant to 38 U.S.C. § 7252(a). This matter was referred to a panel of the Court to determine whether 38 U.S.C. § 1304, when read together with 38 U.S.C. § 1151, provides any exception to the requirement that, to establish status as a surviving spouse, the claimant must have been married to the veteran for the one year prior to the veteran’s death. Because we find that the plain language of section 1304 is clear and no equitable remedy is available, the October 2012 Board decision will be affirmed.
*207 I. FACTS
Mrs. Gazaille’s late husband, veteran Dennis L. Gazaille, served on active duty in the U.S. Marine Corps from April 1966 to June 1969. The record reveals that Mr. and Mrs. Gazaille were married in Strat-ford, Connecticut, on February 4, 2008. Mr. Gazaille died on December 8, 2008, 58 days prior to his first wedding anniversary. His death certificate lists the cause of death as respiratory distress due to lung cancer. At the time of his death, Mr. Gazaille was in receipt of VA disability benefits for, among numerous other conditions, lung cancer with metastatic cancer to the liver, rated 100% disabling.
In December 2008, Mrs. Gazaille filed an application for dependency and indemnity compensation benefits and benefits for the cause of her husband’s death. In January 2009, a VA regional office granted benefits for the cause of Mr. Gazaille’s death. Later that month, Mrs. Gazaille’s non-attorney representative submitted evidence in support of her claim for dependency and indemnity compensation benefits. Shortly thereafter, the regional office denied Mrs. Gazaille’s claim for dependency and indemnity compensation benefits, finding that she had not been married to Mr. Gazaille for at least one year prior to his death, as required by law. Mrs. Gazaille filed a Notice of Disagreement with that decision and ultimately appealed to the Board.
In a February 2009 statement, Ms, Gaz-aille wrote: “I ... believe if the VA had diagnosed [my husband’s] cancer back when the stomach pains began in the beginning of 2008, and before he had to go to another hospital for them to find it, we would have made our first anniversary, which was last week.” Record (R.) at 132. In a July 2009 statement, Mrs. Gazaille informed VA that she met Mr. Gazaille in January 2006, they moved in together in April 2006, and they got engaged in the summer of 2007. She detailed the care she provided Mr. Gazaille during his medical treatment and reiterated her belief that VA’s failure to diagnose her husband with cancer in January 2008 led to his “premature” death, depriving them of at least eight weeks of marriage (which would have allowed her to meet the one-year requirement to be considered a surviving spouse for dependency and indemnity compensation benefits purposes). R. at 75.
Also in July 2009, through her non-attorney representative, Ms. Gazaille asserted that “she was informally [Mr. Gazaille’s] spouse from January 2006” and that the date of their marriage “was merely a formality to what was already a publicly accepted union.” R. at 84-85. She again asserted that Mr. Gazaille’s death “was hastened by VA’s error in properly diagnosing [his] condition in the first place.. If not for this error in diagnosing [his] condition, he would have lived.” R. at 85.
In October 2012, the Board issued the decision on appeal. The Board determined that Mrs. Gazaille did not meet the criteria for recognition as Mr. Gazaille’s surviving spouse for dependency and indemnity compensation benefits purposes. In particular, the Board found that Mr. and Mrs. Gazaille had not been' legally married for one year prior to his death in December 2008, a common law marriage did not exist between them in either New York or Connecticut, and an equitable finding in Mrs. Gazaille’s favor was precluded by law. This appeal followed.
II. ANALYSIS
Under certain circumstances, dependency and indemnity compensation benefits may be paid to the surviving spouse of a veteran who died from a service-connected condition. 38 U.S.C. § 1310. A “surviving *208 spouse” is a person[2] (1) whose marriage to a veteran meets the requirements of 38 C.F.R. § 3.1CÍ); (2) who was married to the veteran at the time of the veteran’s death; (3) who lived with the veteran' continuously from the date of marriage to the date of death (barring circumstances not applicable here); and (4) has not remarried since the veteran’s death. See 38 U.S.C. § 101(3); 38 C.F.R. § 3.50(b) (2014). Under § 3.1(j), “[m]arriage means a marriage valid under the law of the place where the parties resided at the time of marriage, or the law of the place where the parties resided when the right to benefits accrued.” 38 C.F.R. § 3.1(j) (2014). For marriages that occurred after the veteran’s discharge from service, entitlement to dependency and indemnity compensation benefits also requires, as relevant here, that the surviving spouse be married to the veteran for at least one year prior to the veteran’s death. 38 U.S.C. § 1304(2); see also 38 C.F.R. § 3.54(c)(2) (2014).
On appeal, Mrs. Gazaille does not dispute the Board’s findings that she and her husband were not married for a full year prior to his death and that a common law marriage did not exist under the laws of either New York or Connecticut. Instead, she argues only that VA’s failure to diagnose her husband’s lung cancer in a timely manner delayed treatment and thus hastened his death, effectively preventing her from establishing her status as surviving spouse of at least one year to qualify for dependency and indemnity compensation benefits. Essentially, she asks the Court to establish an exception — either based on a combined reading of section 1304 and •section 1151 or based in equity — to the one-year marriage requirement of section 1304 where VA’s negligence shortens a veteran’s life to a point in time prior to his one-year wedding anniversary.[3]
The Court notes that the Board did not expressly address Mrs. Gazaille’s particular theory of entitlement. Remand is not required on that basis, however, because it is clear that the Board denied Mrs. Gaz-aille’s claim solely because she did not demonstrate that she was married to Mr. Gazaille for at least one year (and, alternatively, because Connecticut does not recognize common law marriage), a requirement that comes directly from section 1304. Accordingly, the Court is able to review the Board’s decision to deny Mrs. Gazaille dependency and indemnity compensation benefits.
A. Statutory Considerations
The question presented is purely one of statutory interpretation, and so we begin— and here, we end — with consideration of the plain language of section 1304: “No dependency and indemnity compensation shall be paid to the surviving spouse of a veteran dying after December 31, 1956, unless such surviving spouse was married *209 to such veteran—... (2) for one year or more.” 38 U.S.C. § 1304(2).
“When ... the terms of a statute [are] unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances.” United States v. James, 478 U.S. 597, 606, 106 S.Ct. 3116, 92 L.Ed.2d 483 (1986) (internal quotation omitted). Moreover, absent a “clearly expressed legislative intention to the contrary,” a statute’s plain meaning “must ordinarily be regarded as conclusive.” Consumer Prod. Safety Comm’n v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). Here, section 1304 is plainly unambiguous: no dependency and indemnity compensation benefits “will” be paid “unless” the claimant was married to the deceased veteran “for one year or more.” 38 U.S.C. § 1304(2). In fact, we are hard pressed to imagine a way in which the statute could be plainer, and the statute creates no exceptions for circumstances such as Mrs. Gazaille’s nor any other so-called “good faith” exceptions. Moreover, Mrs. Gazaille cites, and the Court can find, nothing in the legislative history that would lead us to the conclusion that Congress intended something other than what it expressly set out in section 1304.
Mrs. Gazaille urges the Court to read section 1304 in conjunction with section 1151, which provides for dependency and indemnity compensation benefits where VA’s negligence caused the veteran’s death, to find that Congress intended an exception to section 1304 in cases of negligence. It is true that “the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.” Davis v. Mich. Dep’t of Treasury, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989). Even so, the Court finds no basis for Mrs. Gazaille’s theory. Congress provided for dependency and indemnity compensation benefits where VA’s own negligence caused the veteran’s death, but Congress also expressly limited the class of claimants who are eligible for dependency and indemnity compensation benefits under any circumstances to those who were married to the veteran for a full year prior to his death, without stating, in either statute, that exceptions could be made.
The length of marriage requirement has evolved since it was first introduced, but it has never included an exception. In 1958, Congress adopted 38 U.S.C. § 404, the precursor to section 1304:
§ 404. Special provisions relating to widows
No dependency and indemnity compensation shall be paid to the widow of a veteran dying after December 31, 1956, unless she was married to him—
(1) before the expiration of fifteen years after the termination of the period of service in which the injury or disease causing the death of the veteran was incurred or aggravated; or
(2) for five or more years; or
(3) for any period of time if a child was born of the marriage.
Pub.L. 85-857, Sept. 2, 1958, § 404. Section 1151, then 38 U.S.C. . § 351, was adopted at the same time:
Where any veteran shall have suffered an injury, or an aggravation of an injury, as the result of hospitalization, medical or surgical treatment, or the pursuit of a course of vocational rehabilitation under chapter 31 of this title, awarded him under any of the laws administered by the Veterans’ Administration, or as a result of having submitted to an examination under any such law, but not the result of his own willful misconduct, and such injury or aggravation results in additional disability to or the death of such veteran, disability or death com *210 pensation under this chapter and dependency and indemnity compensation under chapter 13 of this title shall be awarded in the same manner as if such disability, aggravation, or death were service-connected; except that no benefits shall be awarded unless application be made therefor within two years after such injury or aggravation was suffered, or such death occurred.
Pub.L, 85-857, Sept. 2,1958, § 351. As is clear from the plain language, neither statute contained any exceptions 'to the length-of-marriage requirement for dependency and indemnity compensation benefits.[4]
In 1967, Congress amended subsection (2) of section 404 to “enlarg[ej widows’ eligibility for benefits” and implemented the one-year requirement, but again made no exceptions to the length-of-marriage requirement. Pub.L. 90-77, Aug. 31, 1967. With the exception of redesignation at 38 U.S.C. § 1304 in 1991, Pub.L. 102-83, Aug. 6, 1991, this statute remains substantively unchanged today.
Section 351, also redesignated in 1991 as section 115Í (Pub.L. 102-83, Aug. 6,1991), remained unchanged, save nonsubstantive wording changes, until 1996, when it was amended to add a fault requirement — that is, to require the claimant to demonstrate fault on the part of VA to establish entitlement to benefits under the statute — but again, Congress made no exceptions to the one-year marriage requirement for dependency and indemnity compensation benefits. Pub.L. 104-204, Sept. 26,1996.
In light of this historical discussion, the Court concludes that there is no basis, even when the statutes are read together and in light of the statutory scheme, for a finding that Congress intended to make any exception to the length-of-marriage requirement contained in section 1304.
In all, the Court finds that the plain language of section 1304 that creates a one-year marriage requirement to establish status as a surviving spouse is a bright line rule that does not provide for exceptions under any circumstances.
B. Equitable Considerations
Mrs. Gazaille also argues that the Court has equitable powers to create an exception to the one-year marriage requirement. In support of this argument, she notes that the Court has created other equitable exceptions to statutes where VA has acted wrongly, most notably that the Court permits appellants to equitably toll the 120-day deadline of 38 U.S.C. § 7266(a) to file Notices of Appeal from adverse Board decisions where the appellant relied on incorrect information provided by a VA employee. See generally Bove v. Shinseki 25 Vet.App. 136 (2011). Mrs. Gazaille asserts that the common law principle that a person may not benefit from his wrongdoing should inform the Court’s decision to exercise its powers of equity where VA’s negligence results in a veteran’s death. See Valasco v. West, 12 Vet.App. 172, 175-76 (1999) (Steinberg, J., concurring) (stating that equitable estoppel should “prohibit the Secretary from benefitting — if, indeed, it can properly be said that the Secretary ‘benefits’ from the denial of a benefit to a VA claimant — from his own wrongdoing to the detriment of a claimant”). Our distinguished dissenting colleague would remand this matter on the ground of equitable estoppel.
Equitable estoppel “is grounded in ... the principle of equity that no person may take advantage of his or her own wrong,” 31 C.J.S. Equitable Estoppel § 74 (2008). *211 It “operates to place the person entitled to its benefit in the same position he would have been in had the [other party’s] representations been true,” j. Eaton, Handbook of Equity Jurisprudence § 62, 176. Although the Court is sympathetic to Mrs. Gazaille’s circumstances, we find that she has simply not demonstrated that equitable estoppel is permissible against the Government, let alone warranted in this case.
The United States Supreme Court has never held that equitable estoppel may be applied against the Government, although it has, perhaps, left the door to that possibility slightly ajar. See Office of Personnel Management v. Richmond, 496 U.S. 414, 421, 422, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990) (stating, that, “[d]e-spite the clarity of these earlier decisions [finding no equitable estoppel against the Government], dicta in our more recent cases have suggested the possibility that there might be some situation in which estoppel against the Government could be appropriate,” but noting that “we have reversed every finding of estoppel [against the Government] that we have reviewed”), rehearing denied, 497 U.S. 1046, 111 S.Ct. 5, 111 L.Ed.2d 821 (1990); Heckler v. Comm. Health Serv. of Crawford Cty., Inc., 467 U.S. 51, 60-61, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (“[W]e are hesitant, when it is unnecessary to decide this case, to say that there are no cases in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government.”). The Supreme Court has held, however, that “even assuming that principles of equitable estoppel ever applied against the Government, ‘a private party surely cannot prevail [on that theory] without at least demonstrating that the traditional elements of estoppel are present.’ ” Lyng v. Payne, 476 U.S. 926, 935, 106 S.Ct. 2333, 90 L.Ed.2d 921 (1986) (quoting Comm. Health Serv., 467 U.S. at 61, 104 S.Ct. 2218). Those elements include that
the party claiming the estoppel must have relied on its adversary’s conduct “in such a manner as to change his position for the worse,” and that reliance .must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary’s conduct was misleading.
Comm. Health Serv., 467 U.S. at 59, 104 S.Ct. 2218 (quoting 3 J. Pomeroy, Equity Jurisprudence § 805, p. 192 (S. Symons ed. 1941)); see also 31 C.J.S. Estoppel and Waiver § 247, p. 648 (citing Patton v. Dole, 806 F.2d 24 (2d Cir.1986) (“A claim for equitable estoppel against the federal government typically involves a situation in which an employee of an administrative agency incorrectly represented the law in rendering advice to a citizen who relies on that representation to the citizen’s detriment.”)). There is no allegation here, nor is there any indication in the record, that Mr. Gazaille or Mrs. Gazaille relied to their detriment on any misrepresentation of law by an agent of the Secretary. Accordingly, even if equitable estoppel is permitted against the Government, it is not warranted under the facts of this case.
Two of the four eases our dissenting colleague cites in favor of the proposition that equitable estoppel against the Government is not foreclosed in all instances involve involuntary waivers of statutory requirements by the Government as a result of the Government’s failure to comply with a statutory requirement, not equitable es-toppel based on misinformation provided by the Government. See Brush v. Office of Personnel Management, 982 F.2d 1554, *212 1558-62 (Fed.Cir.1992) (holding that, where Government agency failed to inform an annuitant annually of all of the annuitant’s rights of election as required by statute, the Agency essentially waived the requirement at issue); Hamilton v. Brown, 4 Vet.App. 528, 545 (1993) (holding that, where VA failed to send veteran formal application form as statutorily required, VA waived the requirement that a claim be filed on the formal application form).
A waiver, though similar to equitable estoppel, relies on a different legal construct. A waiver “operates to preserve rights already acquired and to prevent forfeiture or avoidance of duties and to create new rights or new causes of action.” 31 C.J.S. Estoppel and Waiver § 211, p. 611 (citing Blew v. Conner, 328 S.W.2d 626 (Mo.1959)). Importantly, however, neither the doctrine of equitable estoppel nor “[t]he doctrine of waiver can[ ] be invoked to nullify a mandatory statutory restriction.” Id. at 612 (citing Missouri Pac. R. Co. v. American Statesman, 552 S.W.2d 99 (Tex.1977) (where a statute required no less than 22 feet of clearance beneath a structure, but an agent of the railroad assured the newspaper that 16 feet, 4 inches, would be sufficient, railroad did not waive the statutorily required clearance height and was not liable for damage to newspaper’s facility caused when its train collided with the too-short overpass)). In this case, section 1304 is a “mandatory statutory restriction” on who may receive dependency and indemnity compensation benefits. Accordingly, there can be no waiver of the one-year length-of-marriage requirement and the Government cannot be equitably estopped from enforcing that restriction.
A third case[5] cited by our dissenting colleague does not involve the Government and clearly states that for equitable estoppel to apply, there must be, among other things, “a representation that later proves to be untrue.” Channel v. Loyacono, 954 So.2d 415, 426 (Miss.2007). Again, in Mrs. Gazaille’s case, there has been no misrepresentation made by VA on which she or her husband relied to their detriment. And again, even assuming equitable estoppel is available against the Government, Mrs. Gazaille has not carried her “substantial or very heavy burden” of demonstrating that it is warranted in this case. 31 C.J.S. Equitable Estoppel § 247 (citing Haber v. U.S., 17 Cl.Ct. 496 (1989), aff'd 904 F.2d 45 (Fed.Cir.1990)); Jones v. Dep’t of Health and Human Servs., 843 F.2d 851 (5th Cir.1988).
III. CONCLUSION
Upon consideration of the foregoing, the October 10, 2012, Board decision is AFFIRMED.
HAGEL, Judge, filed the opinion of the Court.
GREENBERG, Judge, filed a concurring opinion.
KASOLD, Chief Judge, filed a dissenting opinion.

. The statute and regulation currently state that a surviving spouse must be "a person of the opposite sex.” 38 U.S.C. § 101(3); 38 C.F.R. § 3.50(b) (2014). VA, however, "is no longer denying marital benefit claims because a ‘spouse’ or a ‘surviving spouse’ is not a person of the opposite sex,” in accordance with the President’s directive to the Executive Branch "to cease enforcement of” those provisions in light of United States v. Windsor, — U.S. -, 133 S.Ct. 2675, 186 L.Ed.2d 808 (2013). See DOMA and Your Benefits, available at https://www.ebenefits.va.gov/ebenefits-portal/ebenefits.portal (click "Learn More”).

. The Court notes that, at this time, there is no evidence in the record that (1) VA delayed in diagnosing Mr. Gazaille, (2) any delay was negligent, or (3) any delay hastened Mr. Gaz-aille’s death by at least eight weeks. The Court assumes, for purposes of this decision, that such evidence could be produced, perhaps with VA’s statutorily required assistance, if we were to remand. See 38 U.S.C. § 5103 A.

. Sections 351 and 404 were redesignated sections 1151 and 1304, respectively, in 1991, without changes. Pub.L. 102-83, Aug. 6, 1991.

. The fourth is Richmond, 496 U.S. at 422, 110 S.Ct. 2465, in which, as noted above, the Supreme Court conceded that the door to equitable estoppel against the Government is not sealed shut but also noted that it had never affirmed a case of equitable estoppel against the Government.