# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-1883

Thomas C. Leavey, Jr., Appellant,

v.

Robert A. McDonald,
Secretary of Veterans Affairs, Appellee.

Before KASOLD, *Chief Judge*, and HAGEL, MOORMAN, LANCE,
DAVIS, SCHOELEN, PIETSCH, and GREENBERG, *Judges*.[1]

## O R D E R

Thomas C. Leavey, Jr., appealed through counsel a May 11, 2012, Board of Veterans' Appeals (Board) decision that denied entitlement to (1) compensable disability ratings for right ear hearing loss prior to April 23, 2007, and bilateral hearing loss prior to June 9, 2009; and (2) a disability rating in excess of 10% for bilateral hearing loss after June 9, 2009. On November 14, 2014, the en banc Court issued a decision affirming the May 2012 Board decision. That same day, counsel for Mr. Leavey notified the Court that Mr. Leavey passed away on November 6, 2014.

On November 21, 2014, the Court granted the motion of Mr. Leavey's counsel to stay proceedings to determine if a potential accrued benefits recipient was available to substitute for Mr. Leavey. On December 10, 2014, counsel for Mr. Leavey advised the Court that Mr. Leavey's widow did not wish to seek substitution as a potential accrued benefits recipient.

This Court adheres to the case-or-controversy jurisdictional constraints imposed by Article III of the U.S. Constitution. *See Mokal v. Derwinski*, 1 Vet.App. 12, 13-15 (1990). Because, absent substitution, claims for disability compensation under chapter 11 of title 38 of the U.S. Code do not survive a veteran, when a veteran dies while appealing a Board decision to the Court, there no longer remains a case or controversy and the Court must dismiss the appeal. *See Padgett v. Nicholson*, 473 F.3d 1364, 1369-70 (Fed. Cir. 2007); *Landicho v. Brown*, 7 Vet.App. 42, 53-54 (1994); *see also Phillips v. Shinseki*, 581 F.3d 1358, 1363 n.1 (Fed. Cir. 2009) (noting that "Congress . . . enacted provisions to allow substitution of [accrued-benefits] claimants as a matter of course" and citing the Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110-389, § 212, 122 Stat. 4145, 4151, now codified at 38 U.S.C. § 5121A). In addition, the Court may vacate the underlying Board decision to prevent it from acting as a barrier to the success of any future claimant seeking accrued benefits. *See Padgett*, 473 F.3d at 1369-70; *see also Breedlove v. Shinseki*, 24 Vet.App. 7, 21 (2010) (per curiam order) ("[I]f, when a veteran has died while an appeal is pending here, no one seeks

---

[1] Judge Bartley recused herself from this matter.

substitution or the person seeking substitution is not an eligible accrued-benefits claimant, then Board vacatur and dismissal of the appeal would be the appropriate action.").

Here, Mr. Leavey died before his appeal was resolved. Because no one has sought substitution in this appeal as a potential accrued benefits recipient, the Court will withdraw its November 14, 2014, decision, vacate the May 2012 Board decision, and dismiss the appeal for lack of jurisdiction.

On consideration of the foregoing, it is

ORDERED that the November 14, 2014, decision of the Court is WITHDRAWN. It is further

ORDERED that the May 11, 2012, Board decision is VACATED. It is further

ORDERED that this appeal is DISMISSED for lack of jurisdiction.

DATED: January 12, 2015                                          PER CURIAM.


DAVIS, *Judge*, with whom MOORMAN, *Judge*, joins, concurring: We concur. In *Padgett v. Nicholson*, the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) recognized the general rule that a veteran's claim for benefits ends with his death and held that if Mrs. Padgett could not be substituted for her deceased husband in his appeal, nunc pro tunc relief would be inappropriate. 473 F.3d 1364, 1370 (Fed. Cir. 2007). In reaching its conclusion, the Federal Circuit noted that the Supreme Court's practice of "'dealing with a civil case . . . which has become moot . . . pending [a] decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss.'" *Id*. (quoting *U.S. v. Munsingwear, Inc.*, 360 U.S. 36, 39 (1950) (first ellipsis in original)). Reversal or vacatur "'clears the path for future relitigation of the issues between the parties and eliminates a judgment, review of which was prevented through happenstance.'" *Id* (quoting *Munsingwear*, 360 U.S. at 40).

Here, Mr. Leavey died prior to the Court's issuance of the opinion and Mrs. Leavey has stated that she does not wish to be substituted in the appeal. Although the en banc Court has invested a tremendous amount of judicial resources into resolving this matter and has written and issued an opinion, because Mrs. Leavey does not wish to pursue the matter as a party appellant, *Munsingwear* and *Padgett* counsel us to withdraw the en banc decision, vacate the Board decision, and dismiss this appeal.


KASOLD, *Chief Judge*, dissenting: With respect to my colleagues in the majority, I find no proper basis for the action taken today, particularly in the absence of a motion by one of the parties to so act, or a show-cause order to the parties why such action should not be taken. *See iLOR, LLC*

*v. Google, Inc.*, 550 F.3d 1067, 1072 (Fed. Cir. 2008) (sua sponte dismissal where the parties are not on notice or have not had an opportunity to address the issues raised by the dismissal constitutes a clear abuse of discretion (citing *Catz v. Chalker*, 142 F.3d 279, 286 (6th Cir. 1998))); *cf. Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (internal quotation marks omitted)).

Admittedly, the scope of our jurisdiction continues to be clarified over time, but it, perhaps more than any other issue, should be an issue that warrants careful scrutiny. Thus, although at one point the death of a veteran mooted his or her case and warranted dismissal for lack of jurisdiction, *Landicho v. Brown*, 7 Vet.App. 42, 53-54 (1994), such is no longer the case when there is known to be a potential accrued-benefits beneficiary who could be substituted, *see Haines v. West*, 154 F.3d 1298, 1300 (Fed. Cir. 1998) ("The accrued benefits provision thus creates a narrowly limited exception to the general rule that a veteran's claim for benefits does not survive the veteran.") (citing *Zevalkink v. Brown*, 102 F.3d 1236, 1244 (Fed. Cir. 1996)); *Breedlove v. Shinseki*, 24 Vet.App. 7, 20 (2010) (noting that "the circumstances considered in *Landicho* . . . have changed" and that continuing to dismiss appeals where "there is an eligible accrued-benefits claimant . . . would be inconsistent with . . . the recently enacted substitution statute"); *see also Padgett v. Nicholson*, 473 F.3d 1364, 1370 (Fed. Cir. 2010) (finding vacatur and dismissal – rather than nunc pro tunc relief – appropriate "if Mrs. Padgett *could not* be substituted") (emphasis added).

Here, Mrs. Leavey could be substituted; she simply has chosen not to seek substitution. Accordingly, there is no longer a jurisdictional basis for withdrawing the Court's decision. That being so, there is no basis for taking such action in the absence of a motion by one of the parties, or an opportunity to respond to an order showing cause why such action should not be taken.

Succinctly stated, the Court's sua sponte action in this case, taken without notice to the parties, is inappropriate and unfair to the parties and the public. *See iLOR and Mathews*, both *supra*; *see also U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 26 (1994) ("Judicial precedents . . . are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." (internal quotation marks omitted). Had Mrs. Leavey desired the action taken by the Court today, she could have requested it,[2] which would have given notice and an opportunity to the Secretary to voice any objection. Alternatively, had the Court issued a show-cause order, it would have given both parties an opportunity to voice their views as to the action taken today.

Moreover, any presumption that both parties would support the Court's action today is speculative. Although Mrs. Leavey retains the opportunity to file an accrued benefits claim and re-

---

[2] Mr. Leavey's counsel learned of Mr. Leavey's death on November 8, 2014, and Mrs. Leavey expressed to him on November 11 a desire to substitute into this appeal. However, counsel did not inform the Court of Mr. Leavey's death until hours after an unfavorable opinion was issued on November 14. Finally, on December 10, counsel informed the Court that Mrs. Leavey elected not to seek substitution.

litigate the merits of her husband's claim, there is little reason to believe there would be any different result. *See Padgett*, 473 F.3d at 1370 (because the Secretary denied the veteran's claim, it was "reasonable to suspect" that the Secretary would deny an accrued benefits award). And, it is difficult to fathom any reason the Secretary would desire the opinion withdrawn only to face possible re-litigation of the claim with the same result. *See id.* (noting that nunc pro tunc relief "furthers judicial and administrative economy by not requiring relitigation and readjudication of issues already decided by the Veterans Court.").

Furthermore, the decision the Court is now withdrawing addressed and clarified an issue of continuing importance to all veterans seeking VA benefits and the Secretary in adjudicating their claims. Indeed, absent some prejudice to either party – and none has been identified – the equities lie in retaining the decision instead of withdrawing it. *See id.* (paramount considerations for nunc pro tunc relief are "justice and fairness to the parties"); *see also U.S. Bancorp, supra*.

For the above reasons, I respectfully dissent from today's order of the Court.

GREENBERG, *Judge*: I dissent. At issue in this case was a veteran-friendly regulation, consistent with Congressional intent as old as the Republic.[3] *See Hayburn's Case*, 2 U.S. (2 Dall.) 409, 410 n., 1 L. Ed. 436 (1792) ("[T]he objects of this act are exceedingly benevolent, and do real honor to the humanity and justice of Congress."); *see* 1 Stat. 243 ("An Act to provide for the settlement of the Claims of Widows and Orphans barred by the limitations heretofore established, and to regulate the Claims to Invalid Pensions."). This veteran died while seeking the hearing before the Board that he believed he had been denied. He died prior to the November 14, 2014, issuance of the Court's decision.[4] His circumstances are a reminder that many veterans are at risk of dying before receiving the full and fair adjudications of their claims to which they are entitled. Circumstances such as their advanced age and declining health, *see Fabio*, 26 Vet.App. 404 (2013), or the fatal consequences of their physical and psychological wounds, *see Veterans for Common Sense v. Shinseki*, 678 F.3d 1013 (9th Cir. 2012), are palpable.

I acknowledge that the veteran's surviving spouse has decided not to request substitution, potentially to prevent the underlying Board decision in this case from acting as a barrier to an accrued benefits claim. I also acknowledge the Court's *voluntary* adoption of the Article III case-or-controversy requirement, and its invocation of that principle here, where a decision and

---

[3] I consider the issues in this case to include *all* issues, briefed by the parties or raised sua sponte, that would contribute to receipt of a remedy at law or equity. *See, e.g.*, *Fabio v. Shinseki*, No. 11-3072, 2013 WL 3899372, at 1 (Vet. App. July 30, 2013) (nonprecedential order for supplemental briefing of issues, to include the broad issue of "[w]hether there exists an equitable remedy this Court may consider"); *Gazaille v. McDonald*, __ Vet.App. __, No. 12-3170, 2014 WL 6808653 (December 4, 2014) (addressing matters of both law *and* equity in resolving appellant's appeal).

[4] I observe that the Supreme Court has in some instances announced its decision months before issuing the full opinions in the case. *See, e.g., Ex parte Quirin*, 317 U.S. 1, 6-7 (1942) ("[T]he public interest required that we consider and decide . . . without any avoidable delay."); *Ex parte Milligan*, 71 U.S. (4 Wall.) 2 (1866).

accompanying opinions have already been published. *See Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990) (adopting "as a matter of policy the jurisdictional restrictions of the Article III case or controversy rubric," but "recogniz[ing] the unsettled nature of the law in this area" and "not attempt[ing] to resolve the controversy" definitively).

The regulation, 38 C.F.R. § 3.103(c)(2), which provides veterans the right to a hearing, must be applied expansively and in a manner commensurate with the importance of Board hearings to veterans. The Court should have decided this case consistent with the propositions that (1) the hearing is an essential aspect of a veteran's claim and should be subject to exacting scrutiny to ensure its fairness and compliance with the law; (2) VA must consider referrals for extraschedular rating in all compensation claims, and that issue must be discussed at the hearing; and (3) hearing errors should be presumptively prejudicial and should not be overlooked based upon the Secretary's or this Court's *intuition* that all evidence that could have been submitted was submitted.

When a veteran seeks a hearing before the Board, "[i]t is the responsibility of the [VA] employee . . . conducting the hearings to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position." 38 C.F.R. § 3.103(c)(2) (2014). The hearing officer must "fully explain the issues still outstanding that are relevant and material to substantiating the claim" and "must suggest that a claimant submit evidence on an issue material to substantiating the claim when the record is missing any evidence on that issue or when the testimony at the hearing raises an issue for which there is no evidence in the record." *Bryant v. Shinseki*, 23 Vet.App. 488, 496 (2010) (per curiam). A "generic statement of the scope of the claims" will not suffice; the Board must explain why the claim was denied, i.e., "the missing elements in his claims." *Procopio v. Shinseki*, 26 Vet.App. 76, 81 (2012). In fact, it was Congress that guaranteed veterans, by statute, the opportunity for a hearing before the Board. 38 U.S.C. § 7107(b) ("The Board shall decide any appeal only after affording the appellant an opportunity for a hearing.").

The Secretary's regulation provides that a Board member "may also be known as a Veterans Law Judge," 38 C.F.R. § 19.2, but members of the Board are appointed by the Secretary and thus are VA employees. Members of the Board are *not* independent from, but in fact must ensure compliance with, the Congressional mandate that VA "make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the . . . claim." 38 U.S.C. § 5103A(a).

VA must consider extraschedular referral for every veteran's compensation claim. *See* 38 C.F.R. § 3.321(b)(1) (2014); *see also Thun v. Peake*, 22 Vet.App. 111, 115-116 (2008). Accordingly, extraschedular consideration is an issue that must be fully explained at a Board hearing. *See Bryant*, 23 Vet.App. at 496.

When a Board member fails to explain the issues on appeal or suggest the submission of additional evidence, it is impossible to know what the veteran could have said or submitted in support of the claim. When the Court cannot say with confidence whether the veteran could have submitted additional evidence or argument to support the claim in the absence of the Board hearing

5

officer's error, "prejudice arises from the failure of the hearing officer to assure the clarity and completeness of the hearing record . . . and the lost additional opportunity to try and submit such evidence before his claim finally was adjudicated." *Id.* at 499 (internal quotation marks and citations omitted) (citing *Wagner v. United States*, 365 F.3d 1358, 1365 (Fed. Cir. 2004) ("Where the effect of an error on the outcome of a proceeding is unquantifiable . . . , we will not speculate as to what the outcome might have been had the error not occurred")).

Contrasting with these requirements imposed by statute, regulation, and legal precedent, the case presented by the veteran was one where the presiding VA employee provided no statement concerning the issue of referral for extraschedular consideration, which was an issue on appeal; no explanation of why the regional office denied the veteran's claims below; no suggestion, in light of the mention of the veteran's prior employment as a hospital administrator, that the veteran provide evidence of the impact of his disability on that employment; and no discussion of the severity of the veteran's right ear hearing loss, also at issue. *See* R. at 246-57. The Board member in the veteran's case failed to make *any* statement suggesting that the veteran obtain evidence related to an issue apparent from the record or mentioned at the hearing, much less perform his specific duties.

That Board member's errors prevented the veteran from effectively participating in his own case. The veteran could never have demonstrated with rigorous specificity the harm he suffered–the evidence he certainly would have submitted or the arguments he absolutely would have raised–to show prejudice, because the Board member's failures kept him from knowing how to appropriately pursue his claim. The VA claims adjudication process is nonadversarial. The veteran is not expected to arrive at VA prepared to take on the agency. Instead, VA is supposed to reasonably assist the veteran in making the best claim he or she can, including explaining the law. *See* 38 U.S.C. §§ 5103, 5103A; *Robinson v. Peake*, 21 Vet.App. 545, 559 (2008) (Schoelen, J., dissenting) ("VA's duty to assist the claimant is the cornerstone of the nonadversarial claims adjudication system the Agency is meant to operate"). Applying strict prejudicial error rules adopted for the adversarial trial system, where parties are expected to fend for themselves, harms a veteran when the assistance aspect of the VA nonadversarial adjudication system breaks down, as it did in this veteran's case, and exposes him or her to potentially devastating consequences for merely trusting VA to perform its duties. *See Shinseki v. Sanders*, 556 U.S. 396, 412 (2009).

The veteran who elects to personally appear before a Board member at a hearing, often without legal representation, deserves the opportunity to fully present his or her best case and personally persuade the authority that will decide the claim that the benefits sought are warranted. Although the hearings are nonadversarial, they effectively represent the veteran's day in court, when the veteran may personally vindicate his or her position before the Board member. The hearing is a critical juncture in the VA claims process, but when the Board member fails to engage with the veteran and explain the case, as happened here, it becomes a hollow charade. The Court should not have overlooked such an error when the veteran plausibly suggested that relevant evidence could have been submitted in the absence of the error. Here, the error was clear, but the effect of whatever evidence the veteran could marshal is anything but clear.

The late veteran served in the Pacific during World War II as a member of the Marine Corps. He was on board the carrier U.S.S. *Wasp* under unremitting enemy kamikaze attack. He never left his post. He never stopped engaging the enemy by firing his anti-aircraft weapon. He was 89 years old when he died. During the pendency of his appeal, he had requested that his claim be expedited, "because of my age and frailty." R. at 25.

In the immortal words of one of America's great war poets: *Once to every man and nation comes the moment to decide.* The veteran *decided* to serve his nation in combat, bravely and in a manner that brought a valor commendation. Nearly 70 years passed. The Secretary violated the law and his own regulation. Although this veteran has died, his circumstances should be remembered in light of the many future veterans waiting their turns to speak to the Board. This Court must not lose sight of this veteran's reality and the reality of all veterans who continue to suffer harmful delays as a result of VA error.