# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-0092

ALLEN GUMPENBERGER, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued November 2, 2018                                        Decided February 7, 2019)

*Kenneth H. Dojaquez*, of Columbia, South Carolina, for the appellant.

*Debra L. Bernal*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Joan E. Moriarty*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before PIETSCH, BARTLEY, and TOTH, *Judges*.

BARTLEY, *Judge*: Allen Gumpenberger appeals through counsel a September 16, 2016, Board of Veterans' Appeals (Board) decision denying entitlement to the payment of attorney fees in excess of $13,092.80. Record (R.) at 2-7. Mr. Gumpenberger represented veteran Edward G. Graham pursuant to a direct-pay fee agreement under 38 U.S.C. § 5904(d)(1) and was successful in invalidating an overpayment debt for him. This matter was referred to a panel of the Court, with oral argument, to address whether Mr. Gumpenberger is entitled to attorney fees equaling 20% of the full amount of the invalidated debt or 20% of the amount recouped by VA while the debt was still valid but then refunded upon debt invalidation. Because the total amount of the invalidated debt does not constitute a "past-due benefit[] awarded" for purposes of section 5904(d)(1), we affirm the September 2016 Board decision.

## I. FACTS

Mr. Graham served on active duty in the U.S. Marine Corps from May 1967 to March 1970. R. at 3. Mr. Gumpenberger, a VA-accredited agent, was the veteran's representative before VA. R. at 221.

In January 2009, a VA regional office (RO) advised Mr. Graham that law enforcement authorities had identified him as a fugitive felon because he was the subject of a warrant that had been outstanding since March 1992. R. at 468-70. As a result, under 38 U.S.C. § 5313B(a), the RO proposed to discontinue Mr. Graham's disability compensation benefits retroactive to December 27, 2001, the date that he was initially awarded those benefits, R. at 468-70. The next month, the RO was notified that the issuing trial court cancelled the warrant effective February 4, 2009. R. at 451.

In May 2009, the RO issued a rating decision implementing the proposed discontinuation of VA benefits during the period that Mr. Graham was receiving disability compensation and had an active felony warrant—i.e., between December 27, 2001, and February 4, 2009—resulting in the creation of an overpayment debt against him. R. at 439-41. Later that month, a VA debt management center informed him that the amount of the debt was $199,158.70, which would be recouped by withholding a portion of his monthly disability compensation benefits beginning in August 2009.[1] R. at 437. Mr. Graham timely appealed the validity of the debt to the Board. R. at 421 (June 2009 Notice of Disagreement (NOD)), 339-54 (January 2010 Statement of the Case (SOC) finding the debt valid), 337 (January 2010 Substantive Appeal).

In January 2011, Mr. Gumpenberger began representing Mr. Graham before VA in this matter. R. at 221, 308, 310, 312, 314. Mr. Graham entered into a fee agreement with Mr. Gumpenberger that provided that the fee for representation would be "20[%] of all past due benefits awarded to me as a result of winning my appeal as provided in 38 C.F.R. § 14.636."[2]  R. at 312.

After further development, *see* R. at 167, the Board in September 2013 issued a decision finding the overpayment debt invalid because Mr. Graham was not aware of the outstanding warrant until VA notified him of it and, therefore, was not a fugitive felon for VA purposes. R. at 166-70. The Board therefore waived the entire debt against him. *Id.* By that point, however, VA

---

[1] Absent a waiver of indebtedness, VA shall collect debts resulting from an individual's participation in a VA benefit program by deducting or offsetting the amount of indebtedness from any current or future VA benefit payments to the debtor. *See* 38 U.S.C. § 5314; 38 C.F.R. §§ 1.911 (2018), 1.912a (2018).

[2] The Board found the fee agreement valid. R. at 3. Because there is no dispute as to the fee agreement's validity, *see* Secretary's Brief (Br.) at 5-6, the Court will not address that issue further. *See Pederson v. McDonald*, 27 Vet.App. 276, 281-86 (2015) (en banc) (declining to review the merits of an issue not argued on appeal); *Cacciola v. Gibson*, 27 Vet.App. 45, 48 (2014) (same); *Grivois v. Brown*, 6 Vet.App. 136, 138 (1994) (explaining that the Court has discretion to deem abandoned issues not argued on appeal).

had recouped $65,464 from Mr. Graham to repay the now invalidated overpayment debt. *See* R. at 136.

In February 2014, the RO implemented the Board decision. R. at 144-47. An accompanying VETSNET Compensation and Pension Award worksheet listed the "Net Effect of Award as of Generation" and the "potential net award entitlement" as $199,158.70. R. at 142-43. A "Retro-(O/P) Award Calculations" worksheet also listed the same amount. R. at 150.

In April 2014, the RO sent Mr. Graham a letter regarding the direct payment of attorney fees to Mr. Gumpenberger for his successful representation of the veteran in invalidating the overpayment debt. R. at 135-36. The RO found the January 2011 direct-pay fee agreement to be valid, but explained that Mr. Gumpenberger was only entitled to receive 20% of the $65,464 that had been erroneously collected during the appeal—i.e., $13,092.80—rather than 20% of the invalidated debt amount of $199,158.70—i.e., $39,831.74—because "the grant of benefits [did] not result in a past-due cash benefit in the amount of $199,158.70." R. at 136. Mr. Gumpenberger timely appealed that decision, arguing that he was entitled to payment of attorney fees equal to 20% of the entire invalidated debt and not 20% of the amount erroneously collected during the appeal. R. at 128 (April 2014 NOD), 89-107 (July 2014 SOC upholding the RO's calculation), 85-88 (August 2014 Substantive Appeal).

In September 2016, the Board issued the decision currently on appeal, which denied payment of attorney fees in excess of $13,092.80 for Mr. Gumpenberger's representation of Mr. Graham in the overpayment debt action. R. at 3-7. The Board concluded that Mr. Gumpenberger was only entitled to receive 20% of the amount recouped from the veteran during the appeal of the overpayment determination because the veteran "had already been awarded the $199,158.70 in disability compensation," invalidation of the overpayment debt did not constitute "the award of that amount as a new disability benefit," and only "the total monies collected to repay the debt . . . represents the past-due cash benefits awarded to the [v]eteran." R. at 6-7. This appeal followed.[3]

---

[3] Mr. Graham did not contest Mr. Gumpenberger's claim for additional attorney fees before VA, nor did he seek to intervene in this appeal. On June 19, 2018, after the case had been submitted to the Court for decision, Mr. Graham passed away.

## II. ANALYSIS

Generally, after an NOD is filed in a case, an agent or attorney may charge and receive a fee for representation of a claimant in that case before VA. 38 U.S.C. § 5904(c)(1); *see* 38 C.F.R. § 14.636(c) (2018). The fee must be reasonable and "may be based on a fixed fee, hourly rate, a percentage of benefits recovered, or a combination of such bases." 38 C.F.R. § 14.636(e). However, if the agent or attorney would like payment of the fee directly from VA (direct-pay fee agreement), the total fee payable to the agent or attorney must come "directly from any past-due benefits awarded on the basis of the claim," 38 U.S.C. § 5904(d)(2)(A)(i); must be "contingent on whether or not the matter is resolved in a manner favorable to the claimant," 38 U.S.C. § 5904(d)(2)(A)(ii); and "may not exceed 20[%] of the total amount of any past-due benefits awarded on the basis of the claim," 38 U.S.C. § 5904(d)(1). *See Ravin v. Wilkie*, 30 Vet.App. 310, 313 (2018).

The dispute in this case arises from the parties' disagreement over the meaning of the phrase "total amount of any past-due benefits awarded on the basis of the claim" as regards a direct-pay fee agreement under section 5904(d). Mr. Gumpenberger principally argues that the phrase encompasses non-cash benefits such as the change in fugitive felon status that resulted in the invalidation of the overpayment debt in this case, thereby entitling him to 20% of the $199,158.70 debt invalidated by the Board. As support for his interpretation, Mr. Gumpenberger relies on the U.S. Court of Appeals for the Federal Circuit's decisions in *Snyder v. Nicholson*, 489 F.3d 1213 (Fed. Cir. 2007), and *Jackson v. McDonald*, 635 Fed.App'x. 858 (Fed. Cir. 2015) (non-precedential); VA's definitions of "benefit" and "claim" in 38 C.F.R. § 20.3(e) and (f); and the RO's initial characterization, in decisional documents, of the benefit awarded in this case. Apellant's Br. at 3-7; Reply Br. at 1-3.

The Secretary asserts that the total amount of the invalidated overpayment debt does not constitute a "past-due" benefit awarded to Mr. Graham because the $199,158.70 debt was not unpaid and owed to the veteran when the debt was invalidated. Instead, the Secretary contends that the "past-due" benefit awarded to Mr. Graham was the $65,464 that was erroneously recouped during the course of the appeal and then paid to Mr. Graham upon invalidation of the debt. Secretary's Br. at 8-11. For the reasons that follow, the Court agrees with the Secretary.

4

A.  "Past-Due Benefits Awarded on the Basis of the Claim" Refers to Unpaid Benefits

As outlined above, with certain restrictions not relevant here, an agent or attorney who enters into a direct-pay fee agreement with a claimant may be paid a fee equivalent to a reasonable percentage of "the total amount of any past-due benefits awarded on the basis of the claim." 38 U.S.C. § 5904(d)(1).

In *Snyder*, the Federal Circuit examined that phrase in the context of a fee dispute stemming from representation of an incarcerated veteran in a claim for service connection for a mental disorder.  Due to the attorney's efforts in that case, the veteran was granted service connection for post-traumatic stress disorder (PTSD) and assigned a 70% disability evaluation that was effective retroactive seven years.  *See Snyder*, 489 F.3d at 1214-15.  However, because 38 U.S.C. § 5313(a)(1) caps the rate of disability compensation payable to an incarcerated veteran at 10%, the veteran was paid benefits at the 10% rate, not the 70% rate, for the seven-year period.  *Id.* at 1215.  The RO therefore determined, and the Board and this Court agreed, that the past-due benefits awarded in that case were equal to seven years of disability compensation at the 10% rate, rather than the 70% rate.  *Id*.

The Federal Circuit reversed this Court's decision, finding the language of section 5904(d)(1) clear and unambiguous as to the meaning of "the total amount of any past-due benefits awarded on the basis of the claim."  *Id*. at 1218.  According to the Federal Circuit, at least in the context of disability compensation, "the basis of the claim" is "[a] claimant's service-connected disability"; an "award" is "the amount stated as the award for success in pursuit of a claim for benefits"; and "to make an 'award[]' on the 'basis' of that claim, [] VA must assign a disability rating."  *Id*. at 1218-19.  The Federal Circuit emphasized that the operative phrase in section 5904(d)(1) is not simply "past-due benefits," but rather "past-due benefits awarded," and clarified that the way to give proper meaning to that entire phrase is to characterize section 5313(a)(1) as a withholding device from the gross amount of past-due benefits awarded to an incarcerated veteran. *Id*. at 1219-20.  Consequently, it concluded that the fee to be paid to an agent or attorney who successfully represents an incarcerated veteran on a disability compensation claim must be calculated as a percentage of the gross—not net—award of past-due compensation benefits.  *Id*. at 1220.

By distinguishing between "awarded" and "payable" benefits in this manner, the Federal Circuit set forth the test for calculating the *total amount* of past-due benefits from which attorney

fees could be paid pursuant to a direct-pay fee agreement. But for our purposes here, the Federal Circuit also made an additional important conclusion about what constitutes a *past-due* benefit in the first place—namely, it held that the "'total amount of any past-due benefits awarded on the basis of the claim' is the sum of each month's unpaid compensation—as determined by the claimant's disability rating—beginning on the effective date and continuing through the date of the award." *Id*. at 1218. Thus, the Federal Circuit essentially equated past-due with unpaid, meaning that, for there to be payment of attorney fees out of the past-due benefits awarded on the basis of the claim, there must first be an award of past-due benefits that were unpaid or owed to the claimant from which those fees could be paid. *Id*.

Eight years after *Snyder*, the Federal Circuit revisited the meaning of section 5904(d)(1) in a non-precedential decision, *Jackson v. McDonald*. In *Jackson*, an attorney with a direct-pay fee agreement successfully represented a veteran in claims for service connection for several orthopedic disabilities. 635 Fed.App'x. at 859. After the Board granted those claims and remanded to the RO for assignment of disability evaluations and effective dates, the veteran died. *Id*. However, the RO was not notified of his death until after it had signed a rating decision setting the evaluations and effective dates for those service-connected disabilities, resulting in substantial past-due benefits that were eventually paid to the veteran's surviving spouse via an accrued-benefits claim. *Id*. When the veteran's attorney sought his fee from VA per the terms of the direct-pay fee agreement, the Board denied him payment because the veteran had died before the RO issued its decision and he had not contracted with the veteran's surviving spouse to represent her in the accrued-benefits claim. *Id*. at 859-60. This Court affirmed the Board's decision on a slightly different ground: namely, that VA had not awarded any past-due benefits to the veteran before his death. *Id*. at 860.

The Federal Circuit disagreed, concluding that the RO awarded past-due benefits on the veteran's claim when it completed the "non-mechanical judgments" of assigning evaluations and effective dates for his service-connected orthopedic disabilities. *Id*. at 861-62. The Federal Circuit held that money need not have actually been paid to a claimant to constitute an "award" of past-due benefits. *Id*. at 862. The Federal Circuit did not, however, disturb *Snyder's* notion that a necessary prerequisite for the payment of attorney fees under section 5904(d)(1) was an award of benefits that were, in fact, past-due.

Taken together, *Snyder* and *Jackson* teach that, for the purposes of determining an agent's or attorney's fee under a direct-pay fee agreement, "the total amount of any past-due benefits awarded on the basis of the claim" does not depend on the amount ultimately payable to the claimant. Instead, the amount of "benefits awarded on the basis of the claim" is determined by VA when the claim is granted and is not affected by an impediment to payment like the statutory bar in *Snyder* or the veteran's death in *Jackson*. Section 5904(d)(1) also makes clear, however, that the source of an agent's or attorney's fee under a direct-pay fee agreement is "the total amount of any *past-due* benefits," which, per *Snyder*, means the total amount of benefits that were "unpaid" or owed to the claimant. 489 F.3d at 1218 (emphasis added). In other words, attorney fees can only be paid, pursuant to a direct-pay fee agreement under section 5904(d)(1), out of those benefits that were past-due.

## B. Application to the Present Case

The foregoing principles dictate that the Court find for the Secretary. Mr. Gumpenberger's theory of the case is that, for section 5904(d)(1) purposes, the past-due benefits awarded in an action challenging an overpayment debt is the total amount of the overpayment debt itself, regardless of the fact that VA had only collected part of the erroneous overpayment debt from the veteran. This argument is fatally flawed because it reads the term "past-due" out of the statute.

As an initial matter, the Court agrees with Mr. Gumpenberger that the "claim" in this case was Mr. Graham's challenge to the validity of the overpayment debt and that the "basis" of that claim was the RO's underlying fugitive felon determination. Appellant's Br. at 4-5; *see* 38 C.F.R. § 20.3(e) (2018) (defining "claim" to include "the defense of a proposed agency adverse action concerning benefits"). We also agree that the "benefit" that accrued from success on that claim was restoration of the veteran's status as not a fugitive felon, which in turn resulted in invalidation of the overpayment debt that VA had been recouping. Appellant's Br. at 4-5; *see* 38 C.F.R. § 20.3(f) (defining "benefit" to include "status, entitlement to which is determined under laws administered by [VA] pertaining to veterans and their dependents and survivors").

But this is where our agreement with Mr. Gumpenberger ends. Although VA changed Mr. Graham's status by determining he was not a fugitive felon, resulting in $199,158.70 of debt relief, no award in that amount was made out of "past-due benefits," as required by section 5904(d)(1), because the overpayment debt itself was not "unpaid" or owed to Mr. Graham upon its invalidation. *See Snyder*, 489 F.3d at 1218 (equating "past-due" with "unpaid"). To the contrary, $199,158.70

7

equals the total amount of monthly disability compensation that was already *actually paid* to the veteran between December 27, 2001, and February 4, 2009, before the debt was created.[4] The RO's finding that Mr. Graham was a fugitive felon during that period, and its subsequent creation of the overpayment debt against him, initially obliged the veteran to repay the $199,158.70 that VA had previously paid to him. When the Board invalidated the debt, VA did not owe Mr. Graham another $199,158.70; rather, it owed him $65,464, the amount it had wrongfully recouped from him. Per *Snyder*, 489 F.3d at 1218, it is this lower amount of "unpaid" and owed benefits— $65,464—not the higher amount of the full invalidated debt that had been paid to Mr. Graham between 2001 and 2009—$199,158.70—that constitutes the total amount of past-due benefits awarded on the basis of his claim.

To hold otherwise would be to ignore Congress's clear mandate that the fees to be paid to an agent or attorney pursuant to a valid direct-pay fee agreement must come from *past-due* benefits awarded, not merely the benefits awarded, on the basis of the claim. *See id.* at 1216 (noting that section 5904(d) "limits the source" of payable fees to the *past-due* benefits awarded). If Congress had intended the construction advocated by Mr. Gumpenberger, it could have omitted "past-due" from section 5904(d)(1). *See Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 70 (2011); *Golz v. Shinseki*, 590 F.3d 1317, 1321 (Fed. Cir. 2010). But since Congress included that term, we must give it meaning. *See Leocal v. Ashcroft*, 543 U.S. 1, 12 (2004) (directing that reviewing courts "must give effect to every word of a statute wherever possible"); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001))). In accepting the Secretary's interpretation of section 5904(d)(1)—that "the total amount of any past-due benefits awarded on the basis of the claim" challenging the validity of an overpayment debt means the total amount of disability compensation erroneously recouped prior to invalidation of the debt—the Court gives meaning to both the terms "awarded" *and* "past-due," thereby avoiding an interpretation that would unnecessarily render the latter term superfluous. *See Freeman v.*

---

[4] That payment had occurred is self-evident: an overpayment debt only exists when VA has paid more to a beneficiary than he or she is entitled to. *See* 38 C.F.R. § 1.962 (2018) (defining "overpayment" as "those benefit payments made to a designated living payee or beneficiary in excess of the amount due or to which such payee or beneficiary is entitled").

*Quicken Loans, Inc.*, 566 U.S. 624, 635 (2012) (noting that the canon against surplusage favors the interpretation that avoids reading terms out of a statute).

None of Mr. Gumpenberger's arguments for a contrary interpretation is availing. First, although he is correct that the Federal Circuit has held that "award" in section 5904(d) means "the amount stated as the award for success in pursuit of a claim for benefits," *Snyder*, 489 F.3d at 1219, and VA has, at times, characterized the award in this case as the total amount of the invalidated overpayment debt, *see, e.g.*, R. at 142-43, 150, those characterizations do not change the fact that invalidation did not result in a *past-due* benefit equal to the total amount of the overpayment debt.[5] Absent the award of a *past-due* benefit of $199,158.70, there is simply no statutory basis for Mr. Gumpenberger to receive 20% of that amount.

To the extent that Mr. Gumpenberger's argument that VA early on characterized the award as $199,158.70 is premised on equitable estoppel or another related, albeit unidentified, legal theory, he has failed to show that equitable estoppel is available against the Government, *see Rosenberg v. Mansfield*, 22 Vet.App. 1, 5 (2007) ("The Supreme Court has held that the Appropriations Clause of the Constitution, U.S. Const. art. I, § 9, cl. 7, precludes the judiciary from ordering an award of public funds to a statutorily ineligible claimant on the basis of equitable estoppel." (citing *OPM v. Richmond*, 496 U.S. 414, 430 (1990)), *aff'd sub nom. Rosenberg v. Peake*, 296 Fed.App'x. 53 (Fed. Cir. 2008); that equitable estoppel is warranted in this case, *see Lyng v. Payne*, 476 U.S. 926, 935 (1986) ("[E]ven assuming that principles of equitable estoppel ever applied against the Government, 'a private party surely cannot prevail [on that theory] without at least demonstrating that the traditional elements of estoppel are present.'" (quoting *Heckler v. Comm. Health Serv. of Crawford Cty., Inc.*, 467 U.S. 51, 61 (1984))); or that he otherwise detrimentally relied on VA's characterization of the "award" such that VA would be prohibited from determining a different amount of past-due benefits awarded on the basis of Mr. Graham's claim, *see Gazaille v. McDonald*, 27 Vet.App. 205, 211-12 (2014) (considering and rejecting equitable estoppel and other related theories where detrimental reliance was not shown).

Second, contrary to Mr. Gumpenberger's contention, Appellant's Br. at 6, affirming the Board decision in this case would not allow the total amount of past-due benefits awarded on the

---

[5] The Court notes that, in the April 2014 fee decision, the RO correctly identified the $65,464 that was erroneously recouped from Mr. Graham as the total amount of past-due benefits awarded on the basis of his claim. R. at 133.

9

basis of this type of claim to "change from time to time even with regard to the same veteran" in violation of *Snyder*, 489 F.3d at 1218. Unlike in *Snyder*, where this Court's erroneous interpretation of section 5904(d)(1) would have resulted in a different total amount of past-due benefits to the veteran depending on whether he was incarcerated (calculated at the 10% rate) or not (calculated at the 70% rate), *id.*, any past-due benefits awarded when VA invalidates an overpayment debt is set and static as to that claimant once VA ends recoupment. The amount of past-due benefits awarded does not change. Although it is true that the past-due benefits awarded to Mr. Graham would have been different if VA had recouped from him a different amount of compensation, the past-due benefits awarded to him would remain equal to the amount recouped and not be dependent on any future contingency, as was the case in *Snyder*.

Thus, any variance in past-due benefits awarded in this case would not constitute impermissible variance with respect to the same claimant in violation of *Snyder*, as Mr. Gumpenberger contends. Appellant's Br. at 6. Rather, any variance is the unavoidable consequence of the length of time it takes for VA to decide whether a debt is invalid. In this regard, past-due benefits for section 5904(d) purposes accrue in the same manner as retroactive disability compensation benefits; both are dependent, for better or worse, on the speed of VA claims processing. This interdependence is not what troubled the Federal Circuit in *Snyder* and, thus, provides no support for Mr. Gumpenberger's interpretation of section 5904(d)(1).

### C. Other Matters

The Court recognizes that tying the amount of past-due benefits awarded on the basis of a claim challenging the validity of an overpayment debt to the amount erroneously recouped by VA prior to invalidation of the debt could result in an agent or attorney not being entitled to a fee under a direct-pay fee agreement, despite securing success on the claim, where no recoupment occurred. That possibility does not, however, change our analysis in this case. Instead, what it highlights is the risk and perhaps the inappropriateness of using a direct-pay fee agreement in a claim, such as Mr. Graham's, where successful representation of a claimant would not necessarily result in an award of past-due benefits. Although direct-pay fee agreements may be the predominant fee agreement used in veterans benefits cases, the Secretary has broadly authorized agents and attorneys to enter into other types of fee agreements, including ones "based on a fixed fee, hourly rate, a percentage of benefits recovered, or a combination of such bases." 38 C.F.R. § 14.636(e). It is only when an agent or attorney desires VA assistance in enforcing a fee agreement via

withholding that he or she is limited to entering into a direct-pay fee agreement with a client. *See* 38 U.S.C. § 5904(d); 38 C.F.R. § 14.636(h); *see also Ravin*, 30 Vet.App. at 313. Agents and attorneys should therefore take care when selecting the type of fee agreement to be used in a particular case.

### III. CONCLUSION

Upon consideration of the foregoing, the September 16, 2016, Board decision is AFFIRMED.